GEORGE E. BULLARD, administrator, *vs.* FRANK H. SMITH.

Suffolk.   Jan. 22. — June 23, 1885.   FIELD, DEVENS, & COLBURN, JJ., absent.

An oral agreement to share equally in the profits and losses resulting from the purchase and sale of stock already owned by one of the parties to the agreement, he having bought it through a broker on a margin, is not a contract for the sale of goods, within the statute of frauds, nor within the statutory provision against stockjobbing, Gen. Sts. c. 105, §§ 5, 6; nor is it a wager contract.

CONTRACT, by the administrator of the estate of George E. Foster, to recover one half of the loss resulting from the purchase and sale of one hundred shares of stock in a railroad corporation. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence tending to show the following facts: On June 3, 1881, Foster gave an order to Jackson and Curtis, brokers, doing business in Boston, to buy and carry for his account one hundred shares of the stock in question. Foster was in the habit of dealing with said brokers on margins, and he did not, at the time of giving said order, or at any time subsequently, deposit any margin or make any payment on account of said purchase; but said brokers were carrying other stocks for him at that time on margin, and his account with said brokers was considered good enough to warrant said purchase for him by them on margin. Jackson and Curtis did not personally

purchase said stock, but sent the order therefor to McGinnis Brothers and Fearing, brokers in New York, their agents, sending no money and making no payment on account of a margin to McGinnis Brothers and Fearing. The latter were carrying other stocks on margin for Jackson and Curtis, and the state of their account was considered sufficient to warrant such a purchase on the credit of Jackson and Curtis. . McGinnis Brothers and Fearing bought said stock, and received a certificate therefor, but in whose name said certificate was, or how indorsed, did not appear. McGinnis testified that his firm bought the stock, and, on January 4, 1881, received the stock, and paid $5000 therefor, which was charged to the account of Jackson and Curtis; that, after the certificate passed, it was held for their account; and that he did not know in whose name the certificate stood. Neither Foster nor Jackson and Curtis ever had a certificate of said stock; and McGinnis Brothers and Fearing never knew Foster in the transaction, nor of his having any interest in said stock, nor would they have recognized any direction of his relating thereto, unless said direction came through Jackson and Curtis.

Said stock was carried in the manner aforesaid from the time of its purchase down to the time when Foster died, in September, 1881. On September 19, 1881, the plaintiff was appointed administrator of Foster's estate; and on September 23, 1881, the plaintiff sent a note to the defendant, requesting him to inform the plaintiff what interests he had in connection with Foster Thereupon the defendant called upon the plaintiff, and stated that he had a half interest in said stock. The plaintiff asked him to settle his share of the loss. The defendant said that he was then unable to settle his share of the loss on the stock if then sold, that the market price was then less than its cost, but he wished the plaintiff to carry the same along for him, and the plaintiff consented to do so.

Afterwards certain correspondence ensued between the plaintiff and the defendant, which was put in evidence, and the substance of which was as follows: On February 11, 1882, the plaintiff wrote to the defendant stating that he was unwilling to carry the stock any longer except upon a margin which would make him secure, and requesting the defendant to advise the plaintiff what course the defendant wished to be pursued. To

this letter the defendant replied on February 15, 1882, stating that he one day happened into Foster's office, and Foster told him that he had purchased the stock in question, and said that he might have a half interest in it if he wished; and Foster told him that he, Foster, would hold the stock for a profit, and he would not have to put up a cent, and would be given half the profits. The letter then proceeded as follows: "Regarding this as a disposition on his part to do me a favor, and give me an interest in a purchase in which I should share only in the profit, (he having previously stated to me that he would give me an opportunity to make some money,) I of course accepted, and I am satisfied that, if Mr. Foster had lived, he would have given me any profit that might have accrued, and would never have called on me for money, or held me responsible in any way. Therefore I do not consider that I am in any sense responsible." To this letter the plaintiff replied, on February 16, declining to accept the statement, and reminding the defendant that in September he had admitted his liability and asked for further time. On March 21, and April 8, the plaintiff wrote to the defendant asking authority to sell the stock. On April 10, the defendant wrote to the plaintiff as follows: "In regard to the matter that you write to me of, I refer you to the letter sent you some time ago. I then told you all that I know, and the truth." On April 12, the plaintiff wrote to the defendant, stating that he proposed to sell the stock in the course of a few days, and demanding one half of the loss; and on April 25, the plaintiff wrote again, that he had sold the stock, and stating the account.

The plaintiff never held a certificate of said stock, nor did he pay for and receive the same; but, on April 25, 1882, he gave Jackson and Curtis an order to sell the same, and Jackson and Curtis sent said order to McGinnis Brothers and Fearing, and they reported a sale thereof at $36 per share. The plaintiff settled with Jackson and Curtis on the basis of such sale at $36 per share. At the trial, no question was made as to the sale of the stock at said rate, and the loss thereon.

The plaintiff called the defendant as a witness, who testified that he was a friend of Foster's; that he had performed some work for Foster at his house as an artist; that Foster was highly

pleased therewith, and on one occasion, at the defendant's studio, told the defendant of some fortunate speculations he had had in stocks; that he then suggested that he would some time give the defendant a chance to make some money; that one day he informed the defendant that he had purchased said shares of stock, and told the defendant he could have one half interest in the same; that the defendant replied he could not spare the money to put up as margin for the same; that Foster said he need not put up anything, as he would look out for that; that Foster stated that he always held on to his stocks, and sold at a profit, and he would not sell at a loss; that the defendant accepted the offer; and that Foster never called on him for any money during his lifetime, nor for anything else, although the price of said stock after its purchase continually went down; that when he called on the plaintiff he stated these facts, but the plaintiff seemed to disregard them, and he wrote them in the letter of February 15. The plaintiff denied that the defendant had so stated to him, but contended that the defendant admitted he had a half interest for profit or loss on the stock. This was all the evidence offered by the plaintiff.

The defendant offered no evidence, and rested his case, and requested the judge to rule that the plaintiff had not made out a case, because the contract was illegal, as a gambling contract; because it was a contract for the sale of goods, wares, and merchandise exceeding fifty dollars in value, without any memorandum in writing, or any delivery or acceptance, or any payment of earnest; and because neither Foster nor the plaintiff was the owner or assignee of said stock, nor authorized by the owner or assignee thereof, or his agent, to make an agreement for any sale or transfer of any interest therein. But the judge declined so to rule.

The defendant then requested the judge to instruct the jury as follows: 1. There is no legal and competent evidence in this case of any contract which is binding upon the defendant. 2. There is no evidence in this case that the plaintiff or his intestate was the owner or assignee of the owner of the stock in question, or authorized by the owner or assignee thereof, or his agent, to sell or transfer the stock in question, or any interest therein; and the plaintiff cannot recover, either on any contract

or conversation between Foster and the defendant, or Bullard and the defendant. 3. The evidence in this case shows that the contract between the plaintiff's intestate and the defendant was to sell a certain interest in one hundred shares of railroad stock, and was required by the provisions of the Public Statutes to be in writing. Not being in writing, it is not enforceable against the defendant. 4. The evidence in this case shows that the contract between the plaintiff's intestate and the defendant was to sell or transfer a certain interest in one hundred shares of railroad stock; and the provisions of the Public Statutes of this State require that the plaintiff's intestate should be at the time of making the contract the owner or assignee of said stock, or authorized by the owner or assignee thereof, or his agent, to sell and transfer said interest therein. 5. The burden of proof is on the plaintiff to establish a contract between the plaintiff's intestate and the defendant which is legal and valid, and does not violate any of the requirements of the foregoing statutes. 6. There is no evidence in this case to show when the contract was made between Foster and Smith, and therefore there is nothing to show whether the stock had been bought pursuant to the order given or not. The plaintiff cannot therefore recover. 7. If the jury find that the stock was bought upon the order of Foster, and for his account, and was thereafter held by McGinnis, as McGinnis testified, and the defendant orally agreed to share equally in the profits and losses which might result from the purchase and sale of the stock, then such contract is illegal, and cannot be enforced against the defendant.

The judge declined to instruct the jury as requested, but instructed them as follows: " If the jury find that the stock was bought upon the order of Foster, and for his account, and was thereafter held subject to his order and control, and that, after the purchase, Foster and the defendant orally agreed to share equally in the profits and losses which might result from the purchase and sale of the stock, the plaintiff is entitled to a verdict for one half of the difference between the cost of the stock, with interest from the time of purchase to the time of sale, and the price at which it was sold ; and to one half of the difference so found interest should be added from the date of demand of payment."

The judge further instructed the jury, that the action could not be maintained, unless they found that the contract between Foster and the defendant was, in substance, that Foster should pay to the defendant one half the profit upon the sale of said stock, in consideration of the promise of the defendant to pay to Foster one half the loss if the stock was sold at a loss; and that such a contract was not a contract for the sale of goods, wares, and merchandise, and was not within the statute of frauds.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. E. L. Dillaway*, for the defendant.

*P. West*, for the plaintiff.

C. ALLEN, J. The defendant contends that, if the evidence shows any contract, it is not binding, because it was a contract, not in writing, for the sale of goods, wares, and merchandise exceeding fifty dollars in value, within the Gen. Sts. *c.* 105, § 5. The jury, however, under the instructions given to them, must have found that the contract was of a different character; and that it was, in substance, a contract between Foster and the defendant to share equally in the profits and losses which might result from the sale of the stock. Such finding was warranted by the evidence. The plaintiff's testimony was that the defendant stated to him that he had a half interest in the stock, and that he recognized a liability for his share of the loss. It is not necessary to consider how far this was modified by the defendant's own statement, at the trial, of the contract, or of his interview with the plaintiff, or by his letter to the plaintiff. The jury may have accepted the plaintiff's testimony as accurate; and, on a bill of exceptions, we cannot revise their finding upon this subject. Assuming the contract to have been according to the plaintiff's testimony of the defendant's statement to him, it was not a sale of goods within the statute of frauds, nor within the statutory provision against stockjobbing. Gen. Sts. *c.* 105, § 6. *Colt* v. *Clapp*, 127 Mass. 476.

Nor was it shown to be a wager contract. It was a contract by which the defendant was to share in a speculation which had been entered into by Foster, the plaintiff's intestate. So far as appears, Foster supposed that the shares had been bought and

were held for him by the brokers to whom he gave the order. The fact that he put up no margin which was specifically applicable to this purchase was immaterial. By reason of other transactions, his account with the brokers was good; and, independently of other transactions, his credit may have been good, so that the brokers were willing to trust him. There is nothing to show that Foster was ever aware that the brokers had procured other brokers to purchase and carry the stock. No point on this subject is presented by the bill of exceptions. Nor was Foster or the plaintiff, if he considered himself morally bound to fulfil his agreement with the brokers, obliged to refuse to fulfil it upon such an objection, unless instructed by the defendant to do so. *Durant* v. *Burt*, 98 Mass. 161, 167. It has often been held, that no man is bound to set up the statute of frauds as a defence, for the benefit, or even at the requirement, of another, in a personal action against him upon a claim, the obligation of which he recognizes as founded in good faith and right. *Cahill* v. *Bigelow*, 18 Pick. 369. *Ames* v. *Jackson*, 115 Mass. 508. Even if the contract could not in law have been enforced against the plaintiff, which we do not decide, he had a right to carry it out according to its terms, and the defendant would be bound by his act in doing so, no notification to the contrary having been given.

The fact that Foster had already made the purchase on his own account, when the defendant's contract with him was made, does not affect the principle. To constitute a partnership in profits, it is not essential that there should be a community of interest in the capital or stock producing the profits. 1 Lindley on Part. (4th ed.) 20, 21. Story on Part. § 27. Such partnership might exist, though Foster furnished all the capital, and though the shares stood in his sole name.

The assumption by the defendant in his brief, that the stock was never owned nor contemplated to be owned by Foster, or to be under his control or disposition, and that the contract was understood by the parties as merely nominal, is not supported by the facts in proof.                    *Exceptions overruled.*