F. J. SENNOTT *vs.* COBB'S PEDIGREED CHICKS, INC.

Middlesex. December 6, 1948. — March 3, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Frauds, Statute of. Contract,* Repudiation, Oral contract.

The defence of the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6, to an action based on a refusal by the defendant to accept goods pursuant to an oral order by him later confirmed by the plaintiff by a writing dated May 27 and numbered 6077 and containing the necessary details of a contract of sale and purchase but not signed by or on behalf of the defendant, was removed where the defendant, after orally attempting to cancel the contract, wrote the plaintiff, "accept my cancellation of" all the goods "dated May 27th under contract number 6077. We will definitely not accept them."

An oral contract, although within the statute of frauds, is a real existing contract lacking only the formal requirement of a memorandum to render it enforceable in litigation, and it cannot be repudiated by unjustified unilateral action of one of the parties.

CONTRACT. Writ in the District Court of Central Middlesex dated December 23, 1946.

---

[1] "A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . (2) are liabilities . . . for willful and malicious injuries to the . . . property of another." U. S. C. (1940 ed.) Title 11, § 35.

The case was heard by *Northrup*, J.

*H. A. Reynolds* (*N. C. Fitts* with him,) for the defendant.

*J. C. Gahan, Jr.*, (*E. Field* with him,) for the plaintiff.

Qua, C.J. This action of contract was brought in a District Court to recover damages suffered in consequence of the refusal of the defendant to accept and pay for three carloads of oats ordered by the defendant from the plaintiff. The defendant pleads the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6. The issue is whether there was "some note or memorandum in writing of the contract or sale" signed by the defendant sufficient to satisfy the statute. The trial judge found for the plaintiff. The Appellate Division dismissed a report, and the defendant appeals.

There seems to have been no substantial dispute about the facts, with a single exception hereinafter noted. At any rate, the judge could have found the following. On or about May 27, 1946, one Cobb, as the defendant's agent, orally ordered the three carloads. Subsequently the plaintiff mailed to the defendant a written confirmation of the order which bore the number 6077 and the date May 27, 1946, and which contained the necessary details of a contract of sale and purchase, but which was signed only by the plaintiff. In July the plaintiff cancelled, or purported to cancel, certain orders for mash which he had promised to deliver to the defendant, but insisted that the defendant take the oats. The plaintiff testified that thereupon, on July 28, Cobb said he was cancelling the contract for the oats, but the plaintiff later in the trial, without denying that Cobb said this, testified that there was no such cancellation. The trial judge seems to have found that on July 28 there was no attempt by the defendant to cancel the contract for the oats and may have been warranted in so finding, but we prefer to assume in favor of the defendant that the plaintiff's testimony that there was no cancellation was no more than his conclusion of law and to deal with the case on the theory that on July 28 Cobb had attempted orally to cancel the contract, as the plaintiff testified that he had. On July 31 Cobb, as the defendant's agent, wrote

and signed a letter to the plaintiff in which he said, "As I told you the other day, I can see no reason why this privilege of cancellation is on the one side and not on the other. Consequently, please accept my cancellation of all three cars of oats, dated May 27th under contract number 6077. We will definitely not accept them."

Clearly this letter, with its reference by number to the original order which contained the terms of sale, was in itself a recognition of the contract and was in form a sufficient memorandum to satisfy the statute and to support the action, even though it included a refusal to perform. *George Lawley & Son Corp.* v. *Buff*, 230 Mass. 21, 24. *Schmoll Fils- & Co. Inc.* v. *Wheeler*, 242 Mass. 464, 469–470. No argument has been made to the contrary.

But the defendant does argue that its oral repudiation through Cobb on July 28, at a time before the defendant had made any memorandum, ended the contract, and that a memorandum made afterwards was ineffectual.

We do not accept this proposition. It is inconsistent with the theory of many of our decisions that an oral contract within the statute of frauds is a real existing contract which lacks only the formal requirement of a memorandum to render it enforceable in litigation. In *Townsend* v. *Hargraves*, 118 Mass. 325, at page 335, this court said that if a memorandum is furnished "then the oral contract, as proved by the other evidence, is established with all the consequences which the common law attaches to it." See *Cahill* v. *Bigelow*, 18 Pick. 369, 372; *Beal* v. *Brown*, 13 Allen, 114, 115; *Amsinck* v. *American Ins. Co.* 129 Mass. 185, 186; *Witherington* v. *Eldredge*, 264 Mass. 166, 175; *Allen* v. *Williams Motor Sales Co.* 277 Mass. 295, 297–298; Williston on Sales (Rev. ed.) §§ 71a, 71b. One of these consequences is that it cannot be repudiated by unjustified unilateral action. In an unsigned article said to have been written by William Caleb Loring, formerly a justice of this court,[1] in 9 Am. L. Rev. 434, at page 443, the author says,

---

[1] See Williston on Sales (Rev. ed.) § 71a, note 12.

"In short, the effect of the statute is not to disturb the formation of the contract in any way; that it leaves as at common law. Mutual promises, for example, were enough to create a contract for the sale of goods at common law; they remain so under the statute. One of the results of the formation of such a contract at common law was, that neither could withdraw from the contract relation then adopted; this the statute leaves untouched; neither can withdraw under the statute: the only difference is that at common law the relation generated by the contract, from which neither can withdraw, is enforceable absolutely; under the statute it is enforceable sub modo, if one of the four formalities is performed. The effect of the section is simply to take away from a contract, after it has been formed, and leaving that formation and all its ensuing results unimpaired, all right of action while its provisions are not complied with." See to similar effect *Taylor* v. *Great Eastern Railway*, [1901] 1 K. B. 774, 778–779. The English cases of *Bailey* v. *Sweeting*, 9 C. B. (N. S.) 843, and *Buxton* v. *Rust*, L. R. 7 Ex. 279, seem precisely in point, and are in accord. See *Wilkinson* v. *Evans*, L. R. 1 C. P. 407. We have seen no case in any court of last resort which takes a contrary view. We do not construe anything in Williston on Sales (Rev. ed.) § 73 as intended to mean that a defendant who has furnished a sufficient memorandum can thereafter rely upon a previous unjustified repudiation. Compare Williston on Contracts (Rev. ed.) § 16, at page 24.

*Order dismissing report affirmed.*