COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* AETNA LIFE INSURANCE COMPANY.

Suffolk. November 5, 1951. — February 14, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Taxation*, Insurance company; Appellate Tax Board: appeal to board. *Words*, "Net value," "Other obligations or prohibitions."

In determining the excise imposed on a life insurance company by G. L. (Ter. Ed.) c. 63, § 20, as amended, on the net value basis, the net value of the company's annuity contracts should be taken at the amount arrived at by the method of computation prescribed by the commissioner of insurance rather than at a larger amount representing the aggregate reserves in fact maintained by the company against such contracts.

Even if, at the time a Connecticut life insurance company filed an appeal with the Appellate Tax Board respecting an excise imposed on it, there was a "prohibition" against the appeal under G. L. (Ter. Ed.) c. 175, § 159, in that an equivalent remedy was not furnished by the law of Connecticut to Massachusetts companies doing business there, the appellant became entitled to prosecute its appeal when subsequently the "prohibition" was removed by the enactment of a Connecticut statute providing such a remedy to all companies.

APPEAL from a decision by the Appellate Tax Board.

*H. W. Radovsky*, Assistant Attorney General, for the commissioner of corporations and taxation.

*R. Wait*, (*J. Dane, Jr.*, with him,) for the taxpayer.

RONAN, J. This is an appeal by the commissioner of corporations and taxation from a decision of the Appellate Tax Board granting an abatement to the Aetna Life Insurance Company of an additional excise tax amounting to $10,702.52 alleged by him to be due upon the premiums collected by the company for the calendar year 1947 as

shown by its return filed in 1948 and assessed to the company under G. L. (Ter. Ed.) c. 63, § 20, as appearing in St. 1943, c. 531, § 1.

The company, a corporation organized under the laws of Connecticut and authorized to do business in this Commonwealth, filed a return in 1948 showing that the net value of its life and annuity policies allocable to residents of this Commonwealth amounted to a certain figure on which a tax computed at one fourth of one per cent amounted to $10,702.52 less than if a tax was computed at two per cent of the premiums received from policies issued to or assumed upon lives of residents of this Commonwealth during the calendar year 1947. The company contends that it is liable only for a tax measured by the net value and not, as the commissioner contends, by the premium basis. The parties have conceded that the proper basis for the tax in question is to be determined by the basis that was applicable to the 1943 business of the company. The return filed in 1944 for the previous year disclosed that a premium tax would exceed a tax on net value if the values of the annuities for that year were computed according to the tables used or approved by the commissioner of insurance of this Commonwealth or at a higher rate where the contract rate of the policy produced a higher rate. The books of the company disclosed that it had an aggregate of reserves against annuities amounting to $1,550,247 more than required by the method of computation prescribed by the commissioner of insurance. The commissioner of corporations and taxation contended that this sum should have been included in calculating the net value of the annuity contracts in its 1944 return and that, if it was, the net value of these policies would be increased to such an extent that the tax on the net value basis would exceed the tax upon the premium basis. If this were true, the company would be liable for a premium tax for 1943 on its Massachusetts business and also for a tax on that basis in every subsequent year. See St. 1943, c. 531, § 2. The question is whether that portion of the aggregate of reserves in excess of the amount computed in accordance with tables

used and approved by the commissioner of insurance should be included in determining the net value of the annuity contracts.

The taxing statute, G. L. (Ter. Ed.) c. 63, § 20, as amended by St. 1941, c. 509, § 5, required every life insurance company to pay annually an excise of one quarter of one per cent upon the net value of all policies in force on December 31 of the preceding year, issued or assumed by the company on lives of residents of this Commonwealth, "as determined by the commissioner from the return required under this section and such other evidence as he may obtain." "In respect to ordinary business the aggregate net value so reported shall be the combined aggregate of the mean reserve computed for each policy, or each group of policies requiring a separate computation to determine their net value, on the basis of valuation used or approved by the commissioner of insurance under section nine of chapter one hundred and seventy-five." Section 20 as qualifiedly amended by St. 1943, c. 531, became effective January 1, 1944. Section 1 of this chapter substituted for an excise based on net value one based on premiums. The change of the tax base did not apply to all companies on its effective date, for by § 2 it provided that, beginning with the 1944 return for the year ending December 31, a company should compute the tax in its return on the basis of net value and also upon premiums, and that so long as the tax on net value was less than the tax on premiums the company was liable for a tax upon net value until in any year the tax on net value equalled or exceeded the tax on premiums, when the company should for that year and for all subsequent years pay the excise on the new premium basis.

The commissioner of insurance was annually required by G. L. (Ter. Ed.) c. 175, § 9, as appearing in St. 1943, c. 227, § 1, to compute the reserve liability or net value on December 31 of the preceding year of every life insurance company with respect to policies and certain contracts issued prior to January 1, 1948, in accordance with certain enumerated rules. The fourth rule provides that the net value of all

outstanding annuity contracts shall be computed on the basis of an expressly designated set of mortality tables "or on such higher table as the commissioner [of insurance] may prescribe, with interest at not more than four per cent per annum," except annuity contracts made before January 1, 1907, and that "annuities deferred ten or more years and written in connection with life, endowment or term insurance shall be valued on the same mortality table from which the consideration or premiums were computed."

"Net value of policies" is defined by G. L. (Ter. Ed.) c. 175, § 1, as "the liability of a company upon its insurance contracts, other than accrued claims, computed by rules of valuation established by sections nine to twelve, inclusive." The only section pertinent to our inquiry is § 9 to which we have already referred.

The taxing statute, St. 1880, c. 227, § 1, in its original form provided for an excise upon a valuation equal to the aggregate net value of all policies on the thirty-first day of December, then next preceding, and this value basis continued until provision was made by St. 1943, c. 531, for the new premium basis. It was provided by St. 1915, c. 217, § 1, that "in respect to ordinary business the aggregate net value reported [by the company in its return] shall be the combined aggregate of the mean reserve computed for each policy, or each group of policies requiring a separate computation to determine their net value, on the basis of valuation used or approved by the Massachusetts insurance department." This method of determining the net value continues so long as a life insurance company is entitled, in accordance with St. 1943, c. 531, to have its tax computed on the net value basis.

The validity of the taxing statute, St. 1880, c. 227, was soon questioned after its enactment and upheld in *Connecticut Mutual Life Ins. Co.* v. *Commonwealth,* 133 Mass. 161. The taxing statute itself did not designate the method for the computation of the net values of its policies. The net value of a policy "within the meaning of our statutes" was said to be "represented by a sum which, with compound

interest at the rate of four per cent per annum and with the addition of future net premiums, will provide for the payment of the policy when it matures, according to the 'combined experience' or 'actuaries' ' table of mortality. St. 1866, c. 33" (page 164). We must therefore in the instant case go to the insurance statutes to determine the meaning of the words net value. Those words are not only defined in the insurance statute but provision is made for the ascertainment of such value. G. L. (Ter. Ed.) c. 175, §§ 1, 9, as amended. The board found in the case at bar that the company in making out its return in 1944 for 1943 computed the net value of its annuities and supplementary contracts according to the tables used or approved by the commissioner of insurance, or at a higher rate where the contract rate of the policy produced a higher value. This was exactly in compliance with the taxing statute. The reserve fund, in addition to the amounts required by the method of computation prescribed by the commissioner of insurance, was rightly omitted in calculating the net value of the annuity contracts. It well may be that a policy of a company having a large reserve is worth more than one from a company having less financial resources, but it must be remembered that the excise is not a property tax although measured by property, and that the value is not market or cash value but the value determined by the use of certain tables. Taxing statutes are strictly construed, and no method other than the one designated by the statute is to be employed in determining the net value for the computation of the tax basis. *DeBlois* v. *Commissioner of Corporations & Taxation,* 276 Mass. 437. *Commissioner of Corporations & Taxation* v. *Fopiano,* 324 Mass. 304. *Riesman* v. *Commissioner of Corporations & Taxation,* 326 Mass. 574.

It follows that a tax on the net value for business done in 1943 was less than a premium tax, and that consequently for that year and (in that event as the parties agree) for 1947 the company was only liable for a tax based on the old net value basis. St. 1943, c. 531, § 2. There was

no error in the decision of the board granting the abatement.

We now consider the motion to dismiss.

This petition for a correction of the tax was filed with the Appellate Tax Board on October 11, 1948. The commissioner seasonably filed an answer and on October 3, 1949, a motion to dismiss. The board denied the motion on March 8, 1951, and on the same day made its decision on the merits. The motion is based upon the grounds that a life insurance company organized and incorporated under the laws of Connecticut may appeal from the assessment of an excise tax imposed upon it by that State but that a foreign life insurance company doing business there has no such remedy; that there is thus created against life insurance companies organized under the laws of this Commonwealth and doing business in that State a prohibition within our retaliatory statute, G. L. (Ter. Ed.) c. 175, § 159[1]; and that therefore the petitioner, a Connecticut corporation, must be denied the right to appeal from the excise assessed here.

A motion to dismiss lies only to reach a defect appearing on the face of the record and not to attack one which requires evidence outside of the record to support it. *Paraboschi* v. *Shaw*, 258 Mass. 531. *Adams* v. *Richardson*, 268 Mass. 78, 81. *Summers* v. *Boston Safe Deposit & Trust Co.* 301 Mass. 167, 169. The company is not seeking an abatement on the ground that it is subjected to a greater financial burden than a life insurance company incorporated here is subjected to under the laws of Connecticut. It in no way relies upon the laws of the latter State for relief. It in no way attacks our taxing statute. The gist of its claim is simply that the commissioner has incorrectly computed the tax. The motion to dismiss does not reach the question of law that it purports to present but sets up a matter going

---

[1] "If by the laws of any other state any taxes, fines, penalties, licenses, fees, deposits or other obligations or prohibitions, additional to or in excess of those imposed by the laws of this commonwealth upon foreign companies and their agents, are imposed on domestic companies and their agents doing business in such state, like obligations and prohibitions shall be imposed upon all companies of such state and their agents doing business in this commonwealth so long as such laws remain in force."

to the merits and is treated and considered as an addition to matters which had previously been alleged in the answer. *Gallo* v. *Foley*, 299 Mass. 1, 4. *Styrnbrough* v. *Cambridge Savings Bank*, 299 Mass. 22, 23. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 498. *Frost* v. *Kendall*, 320. Mass. 623, 624.

There is strength in the argument that the words "or other obligations or prohibitions" as appearing in § 159 are not to be construed as to include something entirely different from taxes, fees, penalties, and the other objects enumerated immediately preceding these words as they first appear in that section and that this view is confirmed because the quoted words near the end of the section are used to embrace all the particular objects named in the earlier part of the section. A Pennsylvania retaliatory statute phrased in a form substantially similar to our own limited the words obligations and prohibitions to objects of the same nature and of the same class as taxes, fines, fees, and the other objects specially mentioned. The court refused to apply the Pennsylvania statute and bar Ohio companies from writing workmen's compensation policies in Pennsylvania where all companies were forbidden to write such policies in Ohio. *Farm Bureau Mutual Automobile Ins. Co.* v. *Neel*, 55 Dauph. Co. Rep. 325. As a general rule retaliatory statutes are strictly construed. See 91 A. L. R. 795, note. On the other hand, the principle of ejusdem generis ought not to be applied in the construction of a statute if the legislative purpose will be defeated. *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 276. *Selectmen of Topsfield* v. *State Racing Commission*, 324 Mass. 309, 312. We need not decide the question as the commissioner cannot prevail upon another ground.

The 1935 Supplement to the Connecticut General Statutes, c. 66a, captioned Domestic Insurance Companies, by § 413c provided that "Any taxpayer aggrieved because of any tax laid under the provisions of this chapter" may appeal to the Superior Court for Hartford County. This chapter did not in terms provide for any tax on a foreign

life insurance company. The 1939 Supplement by § 350e imposed an excise on foreign insurance companies. This last section was repealed by § 294h of c. 66a of the 1945 Supplement and a new section, 289h, inserted providing for an excise tax on foreign insurance companies. The General Statutes of Connecticut, Revision of 1949, which became effective on January 15, 1949, by c. 90, § 1890, provided a remedy by appeal from an assessment of an excise upon domestic life insurance companies but in this respect it made no mention of a foreign life insurance company. The 1949 Supplement, effective October 1, 1949, by c. 90, § 194a, amended § 1890 by extending the appeal to any insurance company. The commissioner contends that no provision for appeal by a Massachusetts company was provided until the passage of § 194a. The company contends that an appeal was granted by § 413c of c. 66a of the 1935 Supplement and continued until the revision of 1949 and was suspended until the enactment of § 194a. We have not discovered any decision of the highest State court of Connecticut upon this point. But in *John Hancock Mutual Life Ins. Co.* v. *Allen*, 16 Conn. Sup. 133, the Superior Court decided on January 4, 1949, that the plaintiff could not secure an abatement from the excises assessed for the years 1944 and 1945 under the general principle allowing a recovery in some instances for an illegal or excessive tax paid under duress or protest — see *Spencer* v. *Consumers Oil Co. Inc.* 115 Conn. 554 — as the court held that such a principle was not applicable because the only remedy available to the company, a foreign life insurance company, was the remedy by appeal which was afforded by § 413c. If this view of the Connecticut statute is correct, when the petition and the plea in abatement was filed with the Appellate Tax Board and its decision was made, there was nothing which barred a life insurance company organized here and doing business in Connecticut from appealing from the excise assessed upon it by that State. If notwithstanding this decision a remedy by appeal from the levy of an excise was not given by the laws of Connecticut to a foreign life insurance company

doing business in that State until October 1, 1949, then there is nothing in G. L. (Ter. Ed.) c. 175, § 159, that prohibits a life insurance company incorporated in Connecticut and doing business in this Commonwealth from filing an appeal under G. L. (Ter. Ed.) c. 63, § 28, and from prosecuting its appeal when any impediment furnished by our retaliatory statute is removed. If the failure of the State of Connecticut to furnish a remedy to our life insurance companies doing business there constituted a prohibition within G. L. (Ter. Ed) c. 175, § 159, then this prohibition continued to be effective only "so long as such laws [of Connecticut] remain[ed] in force." In any event, under our statute the prohibition could not be effective after October 1, 1949. There are instances where one may bring an action which he cannot prosecute until he first complies with some requirement of public policy by filing some instrument with a public officer, or by securing some evidence in writing, or by changing his marital status, or by removing some other incapacity. There was no error in the denial of the motion to dismiss. *Friedenwald Co.* v. *Warren*, 195 Mass. 432. *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank*, 196 Mass. 458. *Giles* v. *Giles*, 279 Mass. 284, S. C. 293 Mass. 495, 499. *Zwick* v. *Goldberg*, 304 Mass. 66, 71. *Sennott* v. *Cobb's Pedigreed Chicks, Inc.* 324 Mass. 9.

*Abatement granted in the sum of*
*$10,702.52 with costs.*