WILLIAM H. SKINNER & another vs. TOBER FOREIGN
MOTORS, INC.

Hampden.  November 7, 1962. — February 7, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

Conflict of Laws.  Sale, Contract of sale.  Contract, Modification, Con-
sideration.  Frauds, Statute of.  Uniform Commercial Code.

Where it appeared that the negotiations between a Massachusetts corpora-
tion having its place of business here and residents of Connecticut for
sale of an airplane to them were conducted here, that the documents in
the sale, including an instalment contract prepared by a Connecticut
attorney on a Connecticut form, were executed here, that the plane was
delivered here and kept in Connecticut, and that subsequently the
parties orally modified the contract as to the instalment payments, and it
did not appear where the modification was made or that the parties
agreed that the law of Connecticut should govern their transactions, the
duties of the parties under the contract and the validity of the modifica-
tion were governed by Massachusetts law under § 1–105 (1) of the
Uniform Commercial Code, G. L. c. 106, as appearing in St. 1957,
c. 765, § 1; with respect to such issues, §§ 1–105 (2) and 9–103 (2)
were inapplicable.  [432–433]
The defence of the statute of frauds was not available to the defendant in
a proceeding where it was not pleaded.  [433]
By reason of § 2–209 (1) of the Uniform Commercial Code, G. L. c. 106,
as appearing in St. 1957, c. 765, § 1, want of consideration would not
invalidate a modification of a contract for sale of an airplane.  [433]

BILL IN EQUITY filed in the Superior Court on June 10,
1960.

The defendant appealed from the final decree entered
after hearing by O'Brien, J., on a master's report.

David Burres for the defendant.

Francis P. Tehan for the plaintiffs.

SPALDING, J.  In this suit the plaintiffs seek equitable re-
plevin of an airplane alleged to belong to them and to be
detained against their right by the defendant; in the alter-
native, damages were sought.

A master, to whom the case was referred, found the fol-
lowing facts: The plaintiffs at all times here material were

residents of Connecticut. The defendant is a Massachusetts corporation and its principal place of business at the time of the transactions under consideration was at Springfield in this Commonwealth. On October 3, 1959, the plaintiffs purchased an airplane from the defendant. Negotiations for the purchase were carried on in Springfield and all of the instruments in connection with the transaction were executed there. These instruments included a bill of sale, an instalment contract, and an instalment note. The instalment contract was a form commonly used in Connecticut, and all the instruments were drawn by a Connecticut attorney retained by the defendant. Neither party was represented by counsel when the instruments were executed. A Connecticut form was used, and a Connecticut attorney was retained, because of the belief on the part of the defendant's president that this was necessary since the plaintiffs lived in Connecticut and the plane was to be based there. The plaintiffs knew that a Connecticut form was being used but were "not aware of the fact that this use had any peculiar legal significance, if any it had."

The instruments executed by the parties provided for payments of $200 per month over a period of twenty-four months with a payment of $353.34 on the twenty-fifth month. Prior to the due date of the first payment the airplane developed engine trouble. This necessitated either the rebuilding of the engine or the installation of a new one at a cost of $1,400. After discussion between the plaintiffs and officers of the defendant, the plaintiffs decided that a new engine should be installed. But the necessity of replacing the engine so soon after the purchase of the plane imposed a financial burden on the plaintiffs which they would be unable to bear. Accordingly, they "offered to return the unrepaired plane to the . . . [defendant] without charge in exchange for a cancellation of all agreements." In order to alleviate the plaintiffs' burdens, and rather than accept the return of the plane, the defendant, through its officers, agreed that for the first year of the instalment contract the payments were to be $100 per month. The plaintiffs agreed

to this arrangement and the new engine was installed. This agreement, which was made late in October, 1959, was oral. The defendant derived no benefit from this agreement other than the facts that the plane was not returned and the payments hereinafter mentioned were made.

Following the making of this agreement the plaintiffs, beginning in November, 1959, and continuing through May, 1960, made payments of $100 each month. Throughout this period the plane was kept in Connecticut.

In March of 1960 the defendant's president told the plaintiffs that thereafter the monthly payments would have to be increased to $200 or "he would have to take action." The plaintiffs did not agree to this proposal and, after another discussion with the defendant's president, made the April and May payments of $100 each.

On May 26, 1960, the defendant's president, accompanied by two deputy sheriffs of Connecticut and another man, went to the Windham Airport at Willimantic, Connecticut, took possession of the plane, and flew it to an airport in this Commonwealth. No demand for full payment was ever made. If the oral modification was controlling the plaintiffs were not in default in their payments.[1] After repossessing the plane, the defendant sold it for $4,400. The master concluded that, subject to the determination of certain questions of law by the court, the damages sustained by the plaintiffs were $2,280, plus interest. This amount was arrived at by deducting from the value of the plane ($6,200) the unpaid balance ($3,920) of the purchase price. From a final decree awarding the plaintiffs damages in the amount found by the master, together with interest, the defendant appeals.

---

[1] We lay to one side the fact that, although the contract called for the making of the monthly payment on the fifteenth of each month, they were in fact made between the fifteenth and the eighteenth. But the defendant never protested, and continued to accept payments on that basis as long as the contract remained in force. The defendant makes no point of this tardiness in its brief. Also of no importance is the fact that for a brief period (seven days) the plaintiffs failed to carry the insurance on the plane which the contract called for. This breach likewise is not relied on by the defendant. Moreover, there were findings that would amply justify the conclusion that the defendant waived these breaches.

The master reported several questions of law for the court's determination, but we need not deal with all of them; those discussed below are decisive of the case.

The defendant argues that Connecticut rather than Massachusetts law governs the transactions. We are of opinion that they are governed by the law of this Commonwealth. General Laws c. 106, § 1–105, inserted by St. 1957, c. 765, § 1 (Uniform Commercial Code), provides: "Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state." There is no finding that the parties agreed that the Connecticut law should apply. The transactions bore an appropriate relation to this State. The contract of sale was executed here and the plane was delivered to the plaintiffs here. *Budget Plan, Inc.* v. *Sterling A. Orr, Inc.* 334 Mass. 599, 600–601. In addition, the defendant (the seller) had its place of business in this Commonwealth.

General Laws c. 106, § 1–105 (2), reads: "Where one of the following provisions of this chapter specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified: . . . . Policy and scope of the Article on Secured Transactions. Sections 9–102 and 9–103." The defendant argues that the quoted subsection brings the transactions within the ambit of § 9–103 (2) which provides: "If the chief place of business of a debtor is in this state, this Article governs the validity and perfection of a security interest . . . . Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. . . ." This section does not aid the defendant. Section 1–201 (37) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." The issue in the

case at bar involves the duties of the parties under the primary obligation; neither party contests the validity or perfection of the security interest. See comment to § 2–102.

There was no evidence one way or the other as to where the oral modification to the written agreement was made. The written agreement, as we have held, bore "an appropriate relation to this state" and was governed by our law rather than by the law of Connecticut. In the absence of any proof that the oral modification did not bear such a relation to this State there is no basis for holding that any other law would govern. Thus the modification, no less than the original agreement, would be governed by art. 2 of the Uniform Commercial Code which deals with sales. Section 2–102 makes this article applicable to "transactions in goods" and there can be no doubt that the transactions here belong to this class. See § 2–105.

The defendant argues that the oral modification is unenforceable and invalid because of the statute of frauds and because it was not supported by consideration. The short answer to the first point is that the defence of the statute of frauds is not available to the defendant, for it was not pleaded. *Watkins* v. *Briggs,* 314 Mass. 282, 284. *Abalan* v. *Abalan,* 329 Mass. 182, 183, and cases cited. We do not, therefore, reach the question whether the transactions would be taken out of the statute by reason of delivery and acceptance of the goods, or by part payment. See § 2–201 (3) (c). As to the oral modification not being supported by consideration the answer may be found in § 2–209 (1) which provides that an "agreement modifying a contract within this Article needs no consideration to be binding."

If the oral modification to the written contract was valid and binding — and we hold that it was — the defendant had no right to take possession of the plane. The defendant makes no contention to the contrary. Rather it seeks to justify what it did on the basis that the oral modification was invalid. It follows that the final decree is affirmed and the plaintiffs are to have costs of this appeal.

*So ordered.*