ZENAS COLT *vs.* WILLIAM S. FRADKIN & another.[1]

Berkshire.   January 4, 1972. — March 21, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Contract,* For sale of securities, What constitutes, Option.   *Frauds, Statute of.   Option.   Statute,* Repeal.   *Conflict of Laws.*

G. L. c. 259, § 6, was not repealed by implication upon the enactment of the Uniform Commercial Code, G. L. c. 106.   [449]

A statute is not deemed to repeal or supersede a prior statute in whole or part in the absence of express words to that effect or of clear implication.   [449–450]

Issue of corporate stock to Massachusetts purchasers, arranged in New York by one as their representative, was a New York transaction governed by New York Law, and in the absence of anything to show that an accompanying agreement, whereby the purchasers gave such representative an option to purchase some of the stock from them, was made in Massachusetts, G. L. c. 259, § 6, governing only contracts made in Massachusetts, was inapplicable [450]; even if the option agreement was made in Massachusetts, it was not within G. L. c. 259, § 6, in the circumstances [450–451].

An oral transaction whereby persons agreed to buy stock of a corporation from it, which in fact was issued to them, and they agreed to give an agent of the corporation who arranged their purchase an option to buy some of the stock from them, was subject to § 8–319 of the Uniform Commercial Code.   [451–452]

With respect to a transaction whereby persons agreed to purchase stock of a corporation from it, which in fact was issued to them, and they agreed to give an agent of the corporation who arranged their purchase an option to buy some of the stock from them, it was held that for the purposes of § 8–319 (b) of the Uniform Commercial Code the option agreement was separate from the agreement for purchase of the stock from the corporation and the "payment" referred to in (b) was payment by the agent of the price for the stock covered by his option rather than his payment in services for the option.   [452–453]

Where it appeared in a suit in equity that in an oral transaction the defendants agreed with the plaintiff, an agent of a corporation, to buy stock of the corporation from it and agreed to give the plaintiff an option to buy some of the stock from them, that the plaintiff sent to each defendant a letter signed by him confirming the transaction and an investment letter and subscription form, and that the defendants signed the investment letters and subscription forms and sent them to the corporation's lawyers, it was held that, although the plaintiff's letters were not signed by the defendants,

[1] Irving Fradkin.

the investment letters and subscription forms signed by them and the plaintiff's letters must be considered to be one instrument in the circumstances and that § 8–139 (a) of the Uniform Commercial Code was satisfied with respect to the agreement giving the option to the plaintiff [453]; or, alternatively, that the option agreement was enforceable under (c) of § 8–319 [453–454].

BILL IN EQUITY filed in the Superior Court on July 24, 1969.

The suit was heard by *Sgarzi,* J., on a master's report.

*Walter J. Hurley (Richard C. Levin* with him) for the defendants.

*Frederick M. Myers (Brian J. Quinn* with him) for the plaintiff.

BRAUCHER, J.   The plaintiff sues for specific performance of an oral agreement by each of the defendants to transfer to him 20,000 shares of stock in the Logic Corporation (Logic) for $1,000.   The matter was referred to a master,who heard testimony and filed a report and a summary of evidence.   An interlocutory decree was entered confirming the report, and a final decree ordered the defendants to transfer the stock to the plaintiff.   The defendants appeal from the final decree.

We summarize the facts found by the master.   The plaintiff, a New York stockbroker, had bought and sold stock for the defendants, who were brothers and optometrists, one in Pittsfield and one in Fall River.   The underwriters for Logic authorized the plaintiff to sell 80,000 shares of Logic stock at five cents a share, and in June, 1967, the plaintiff told the defendant William Fradkin of the offering.   A series of telephone calls between New York and Massachusetts resulted in an oral agreement on July 26, 1967, which the plaintiff confirmed by a xeroxed copy of a signed handwritten letter sent to each of the defendants on that day.

Each of the defendants agreed to buy 40,000 shares at five cents a share, and to give the plaintiff an option to buy 20,000 shares at five cents a share at any time within two years.   The plaintiff agreed that in the event of a loss

he would pay to the defendants in equal amounts one-third of their loss. Each defendant executed a so called "investment letter" and a subscription form enclosed with the plaintiff's letter of July 26, 1967, and sent them to Logic's lawyers, but neither defendant ever acknowledged the plaintiff's letter, although they several times promised during telephone conversations to confirm its terms by letter. The plaintiff arranged for the issuance of the shares, and they were duly issued to the defendants on August 8, 1967. The plaintiff received no brokerage commission. At the time of the agreement, as the plaintiff knew, the defendants did not own or have any other contracts to purchase the shares.

On March 20, 1968, the defendants by letter severed all business relations with the plaintiff because of "poor investment counselling" and their resulting "precarious financial position." On April 1, 1968, by a letter to each of the defendants enclosing a check for $1,000, the plaintiff exercised his option to buy a total of 40,000 shares for $2,000. The defendants returned the checks with a letter stating that "we have no knowledge of any deal with you."

The defendants argue that the contract is void under G. L. c. 259 § 6, that it is void under G. L. c. 106, § 8–319, "Statute of Frauds," and that there is no basis for imposing a constructive trust.

1. We are unable to accept the plaintiff's contention that G. L. c. 259, § 6, was repealed by implication on the enactment of the Uniform Commercial Code, G. L. c. 106. The Code was "intended as a unified coverage of its subject matter." G. L. c. 106, § 1–104. See *Godfrey* v. *Building Commr. of Boston,* 263 Mass. 589, 592; *Homer* v. *Fall River,* 326 Mass. 673, 676–677, and cases cited. But it expressly contemplates that other principles relative to invalidating causes "shall supplement its provisions." We find no "particular provisions" of c. 106 displacing G. L. c. 259, § 6. G. L. c. 106, § 1–103. "A statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to that effect or of clear implication." *Cohen* v. *Price,* 273 Mass.

303, 309.   See *Haffner* v. *Director of Pub. Safety of Lawrence,* 329 Mass. 709, 713–714, and cases cited.

2. General Laws c. 259, § 6, governs only contracts made in this Commonwealth.   *Bearse* v. *McLean,* 199 Mass. 242, 243.   The plaintiff argues that the contract was made in New York, *Nissenberg* v. *Felleman,* 339 Mass. 717, 719, and was to be performed in New York, *Clark* v. *State St. Trust Co.* 270 Mass. 140, 150, and that the transaction bore "an appropriate relation" to New York rather than to Massachusetts, *Skinner* v. *Tober Foreign Motors, Inc.* 345 Mass. 429, 432–433.   The issue of Logic stock to the defendants, arranged in New York by the plaintiff as the defendants' representative, was undoubtedly a New York transaction governed by New York law.   There is no finding that the contract between the plaintiff and the defendants was made in Massachusetts, and in the absence of such a finding we cannot hold the Massachusetts statute applicable.   *Bearse* v. *McLean, supra.   Skinner* v. *Tober Foreign Motors Inc., supra.* New York law is contrary to our statute.   New York Gen. Obligations Law (23A ·McKinney's Consol. Laws of N. Y.) § 5–1101.

3. Even if the contract were made in Massachusetts, it is not within G. L. c. 259, § 6.   That statute, derived from St. 1836, c. 279,[2] resembles the New York statute [3] considered in *Thompson* v. *Alger,* 12 Met. 428, 440: "The policy of the act, and its leading purpose, doubtless were to prevent gambling in the rise and fall of stocks.   The evil to be remedied was that of fictitious sales of stock, stocks never owned, nor contemplated to be owned, or to

[2] "All contracts, written or oral, for the sale or transfer of any certificate or other evidence of debt due by or from the United States, or any separate state, or of any stocks, or of any share or interest in the stock of any bank, or of any company, city or village incorporated under any law of the United States, or of any individual state, shall be absolutely void, unless the party or parties contracting to sell or transfer the same, shall, at the time of making such contract, be the owner or assignee thereof, or shall be duly authorized by some person who is the owner or assignee, or by the legally authorized agent of such owner or assignee, to sell or transfer the said certificate or other evidence of debt, share or interest, so contracted for."

[3] Repealed by N. Y. Sts. 1858, c. 134, § 2.

be under the control or disposition of the vendor. Such sales are understood by the parties to be merely nominal . . . ." See *Stebbins* v. *Leowolf,* 3 Cush. 137, 142–143.

The Massachusetts statute has been applied in one reported case. There the defendant promised to deliver, on demand and payment of $60, forty shares of a mining stock he did not own; later he agreed to pay $800 in settlement. *Barrett* v. *Mead,* 10 Allen, 337. In many other cases, however, the court has refused to apply the statute to contracts contemplating genuine transfers of stock to be acquired pursuant to the agreement. *Barrett* v. *Hyde,* 7 Gray, 160, 161. *Brigham* v. *Mead,* 10 Allen, 245, 246. *Colt* v. *Clapp,* 127 Mass. 476, 480. *Bullard* v. *Smith,* 139 Mass. 492, 497. *Picard* v. *Beers,* 195 Mass. 419, 428. *Wood* v. *Farmer,* 200 Mass. 209, 215.

Since the plaintiff, at the time of making the contract, was the owner's agent, and since he authorized the defendants to sell to him the shares contracted for, the case is literally within the exception stated in the statute. Moreover, the parties contemplated that the defendants would actually buy stock for the common benefit and at the common risk of themselves and the plaintiff.

4. Both parties argue that the contract was a "contract for the sale of securities" subject to § 8–319 of the Uniform Commercial Code. It is immaterial whether the governing statute is G. L. c. 106, § 8–319,[4] or the identical

---

[4] "Section 8–319. Statute of Frauds. A contract for the sale of securities is not enforceable by way of action or defense unless

"(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

"(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

"(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

"(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price."

New York statute. The contract committed the defendants to sell shares of stock to the plaintiff and therefore was not solely a contract between customer and broker as principal and agent. See *Stott* v. *Greengos*, 95 N. J. Super. 96, 101–102; *Lindsey* v. *Stein Bros. & Boyce, Inc.* 222 Tenn. 149, 151–159. The fact that the plaintiff had an option to buy or not to buy did not negate the existence of a contract for sale by the defendants. *Mortimer B. Burnside & Co. Inc.* v. *Havener Sec. Corp.* 25 App. Div. 2d (N. Y.) 373, 374–375. Cf. *Oregon Ridge Dinner Theatre, Inc.* v. *Hamlin,* 253 Md. 462, 468; *Kessler* v. *M. J. Greene Co. Inc.* 39 D. & C. 2d (Pa.) 717, 718–719. We agree with the New York court that we may look by analogy to §§ 2–106 and 2–304 of the Uniform Commercial Code, applicable to the sale of goods, for definitions of "sale" and "price."

We decline to follow *Cohn, Ivers & Co. Inc.* v. *Gross,* 56 Misc. 2d (N. Y.) 491, 493–495, as far as the decision is to the contrary. There the court held that a "call" option was not a "security," and that a contract by which an owner of stock granted such an option was not a contract for the sale of securities under § 8–319 but a contract for the sale of general intangibles under § 1–206. That holding might be appropriate in a case where the holder of an outstanding option made a contract to sell it, but it does not properly apply to a case where the owner or prospective owner of securities contracts to sell them at the buyer's option. See 3 Willier & Hart, U. C. C. Reporter-Digest, § 8–319, A4.

5. The plaintiff argues that § 8–319 (b) has been satisfied both by delivery and acceptance of the securities and by full payment for the option contract. See *Schwartz* v. *Jacobson,* 5 Uniform Commercial Code Reporting Service, 630, 631 (N. Y. Sup. Ct. 1968). Compare, before the Uniform Commercial Code, *Armstrong* v. *Orler,* 220 Mass. 112, 114–115. We think, however, that we may look to § 2–326 (4), which indicates that the sale to the plaintiff is to be treated as a separate contract for sale within the statute of frauds from the sale to the defend-

ants. See *Wolcov* v. *Russell,* 46 Del. Co. R. (Pa.) 202, 204. Similarly, we think that the "payment" referred to in § 8–319 (b) is payment by the plaintiff of the price for the stock, five cents a share, rather than his payment in services of the price for the option. We are confirmed in these conclusions by the explicit statement that "the contract is enforceable under this provision only to the extent of such delivery or payment." This means to us that the seller can recover only the price of what he has delivered and the buyer is entitled to receive only what he has paid for. Cf. *Schlussel* v. *Carlton E. Drake Constr. Corp.* 5 Uniform Commercial Code Reporting Service, 225, 226 (N. Y. Sup. Ct. 1968).

6. The plaintiff's letters of July 26, 1967, were "sufficient to indicate that a contract has been made for sale" by the defendants to the plaintiff "of a stated quantity of described securities at a defined or stated price." § 8–319 (a). Those letters were not signed by the defendants, the parties "against whom enforcement is sought," but they did sign the subscription forms and investment letters transmitted to them with the plaintiff's letters. The three documents, enclosed in the same envelope, must be read as a single instrument in the light of all the circumstances. So read, they satisfy the statute. *Cooper* v. *Vitraco, Inc.* 320 F. Supp. 239, 242 (D. Virgin Islands). *Addiego* v. *Hill,* 268 Cal. App. 2d 280, 286–287. See *Schmoll Fils & Co. Inc.* v. *Wheeler,* 242 Mass. 464, 470; *Sennott* v. *Cobb's Pedigreed Chicks, Inc.* 324 Mass. 9, 11; *Hook Brown Co.* v. *Farnsworth Press, Inc.* 348 Mass. 306, 310; *Crabtree* v. *Elizabeth Arden Sales Corp.* 305 N. Y. 48, 53–57; *Ideal Structures Corp.* v. *Levine Huntsville Dev. Corp.* 396 F. 2d 917, 926–928 (5th Cir.); Restatement 2d: Contracts (Tent. draft No. 4, April 25, 1968) § 208. Cf. *Clark* v. *Olejnik,* 240 Mass. 215, 217–218; *Konsuvo* v. *Netzke,* 91 N. J. Super. 353, 375–376.

7. Alternatively, the plaintiff's letter was "a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a)." § 8–319 (c). It was received by the defendants "within a reasonable time,"

and they "failed to send written objection to its contents within ten days after its receipt." The defendants argue that there could be no confirmation "of the sale or purchase," as distinguished from a confirmation "of the contract" as in § 2–201 (2), until the plaintiff exercised his option. But no hint of such a distinction appears in the draftsmen's comments, no reason for it is suggested, and it seems out of harmony with the rest of the section. We think both the words and the purpose of § 8–319 (c) were satisfied by a written confirmation of a sale to take place at a future time. Cf. *Cooper* v. *Vitraco Inc.* 320 F. Supp. 239, 241–242 (D. Virgin Islands).

8. In view of our conclusions with respect to G. L. c. 259, § 6, and G. L. c. 106, § 8–319, we need not consider the plaintiff's alternative claims of estoppel and a constructive trust.

*Final decree affirmed with costs of appeal.*