## COMMONWEALTH *vs.* RICHARD HARRIS.

Middlesex. October 5, 2004. - March 24, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Rape-Shield Statute. Kidnapping. Intimidation of Witness. Assault and Battery. Assault and Battery on Certain Public Officers and Employees. Resisting Arrest. Evidence,* Prior conviction, Impeachment of credibility. *Practice, Criminal,* Impeachment by prior conviction. *Witness,* Impeachment.

This court concluded that it is within the discretion of the judge presiding at a criminal trial to allow introduction in evidence of a complaining witness's conviction of a sex-related offense for impeachment purposes under G. L. c. 233, § 21, given the lack of any indication that the Legislature intended the rape-shield statute, G. L. c. 233, § 21B, to supersede completely § 21, but that when evidence of such a conviction is offered in a case involving sexual assault, the judge's consideration of the prejudicial effect of introducing the conviction should take into account the important policies underlying the rape-shield statute [718-728]; accordingly, at the trial of indictments charging the defendant with aggravated rape and assault and battery, the judge erred in failing to exercise any discretion when ruling on the defendant's request to introduce the complainant's conviction as a common nightwalker [728-729]. MARSHALL, C.J., dissenting, with whom GREANEY, J., joined.

At the trial of indictments charging aggravated rape, where the Commonwealth had succeeded in excluding all evidence that would link the complainant to prior acts of prostitution, the prosecutor's suggestion in her closing statement that the absence of any evidence that the complainant engaged in prostitution meant that the complainant was not a prostitute gave rise to a substantial risk of a miscarriage of justice necessitating a new trial, in that the judge's standard instructions would not ameliorate the prosecutor's improper reference to the absence of evidence concerning the victim's experience as a prostitute; the error went to the entire crux of the defense; the jury could not, on their own, put the error in perspective and ignore it; and the Commonwealth's case was, although strong, not so overwhelming that the error did not prejudice the defendant. [729-733] MARSHALL, C.J., concurring, with whom GREANEY, J., joined.

INDICTMENTS found and returned in the Superior Court Department on February 28, 2002.

The cases were tried before *Paul A. Chernoff,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Sheryl F. Grant*, Assistant District Attorney (*Suzanne M. Kontz*, Assistant District Attorney, with her) for the Commonwealth.

Sosman, J. The defendant was convicted of aggravated rape (two indictments), kidnapping, intimidation of a witness, assault and battery, assault and battery on a public employee, and resisting arrest. On appeal, he contends that the judge erred in ruling that he had no discretion to admit impeachment evidence that the complaining witness had been convicted as a common nightwalker. The defendant thus asks us to revisit whether the rape-shield statute, G. L. c. 233, § 21B, precludes introduction of convictions of the complaining witness under G. L. c. 233, § 21, if the convictions are for sex-related offenses, a question addressed but left unresolved by an equally divided court in *Commonwealth* v. *Houston*, 430 Mass. 616 (2000) (*Houston*). We conclude that it is within the judge's discretion to admit evidence of such convictions pursuant to G. L. c. 233, § 21, but that the exercise of that discretion must take into consideration the objectives of the rape-shield statute. As such, the judge below erred in failing to exercise discretion when ruling on the defendant's request to introduce the complainant's conviction as a common nightwalker.

The defendant also alleges error in the prosecutor's closing argument. Knowing that the rape-shield statute had precluded the defendant from introducing any evidence of the complaining witness's history of prostitution, the prosecutor attacked the defendant's theory of consensual sexual intercourse with a prostitute by arguing that there was no evidence that the complaining witness was a prostitute. We agree with the defendant that the prosecutor's argument was improper and that it created a substantial risk of a miscarriage of justice. We therefore vacate the convictions of aggravated rape, kidnapping, intimidation of a witness, and assault and battery, and remand those indictments for a new trial.[1]

1. *Facts.* The evidence at trial was as follows. At ap-

---

[1]The conviction of kidnapping was placed on file, and is therefore technically not before us. See *Commonwealth* v. *Ford*, 424 Mass. 709, 713 n.2

proximately 11 P.M. on January 22, 2002, the complainant's boy friend left her by herself at a bar in Lowell. The complainant was a regular customer at that establishment. The defendant, whom she did not know, was already in the bar when she arrived. The defendant approached the complainant and spoke to her briefly, but she ignored him. At approximately 12:30 A.M., the complainant called her boy friend to pick her up, waited inside the bar for a few minutes, and then went outside to wait for her ride.

The defendant followed her out of the bar, grabbed her by the arm, and pulled her across the street. He made a remark that he was "loaded," which she took to mean that he had a gun. Once across the street, the defendant forced her down a stairwell, grabbed the back of her head, and pushed her against the wall. He proceeded to rape her twice, penetrating her both vaginally and anally. At some point during the encounter, he forced her to her knees. The defendant warned her not to "rat" on him and threatened to kill her if she did. Some noise distracted the defendant momentarily, and the complainant was able to break free. Crying, she ran up the stairs and back toward the bar, with the defendant in pursuit. A witness nearby telephoned the police, reporting that a woman was screaming and running down the street, with a man chasing and trying to strike her.

The complainant entered the bar, in a distraught state, followed by the defendant, who acted "nonchalant[]." The

---

(1997). However, where error requiring a new trial on the other convictions would also necessitate a new trial on the kidnapping charge, we order a new trial on that indictment as well. See *Commonwealth* v. *Calderon*, 431 Mass. 21, 28 (2000); *Commonwealth* v. *Prashaw*, 57 Mass. App. Ct. 19, 27 (2003), and cases cited. Moreover, the alleged kidnapping was the sole aggravating factor offered in support of the aggravated rape charges. If, on retrial, the defendant is again convicted of aggravated rape based on the aggravating factor of kidnapping, the kidnapping conviction would be duplicative. See *Commonwealth* v. *Houston*, 430 Mass. 616, 617 n.1 (2000) (Marshall, C.J., concurring) (*Houston*), citing *Commonwealth* v. *Houston*, 46 Mass. App. Ct. 378, 383 (1999).

The convictions of assault and battery on a public employee and resisting arrest, neither of which involved the complaining witness or relied on her testimony, were not affected by either of the errors raised on appeal. Indeed, the defendant's testimony acknowledged commission of both of those offenses. Those convictions are therefore affirmed.

complainant told the bartender that she had been raped.[2] Overhearing the complainant's accusation of rape, the defendant said that he "didn't do nothing." He then went over to the pool tables and resumed apparently normal conversation with other patrons. The police arrived in response to the 911 call.[3] The complainant told one of the officers that the defendant had raped her, and pointed the defendant out to him. When the officer asked the defendant to come outside, the defendant replied that he "didn't do nothing wrong" and refused to accompany the officer. While being placed under arrest, the defendant struggled, biting one of the officers. He was eventually subdued with some form of pepper spray.

The complainant was taken to a hospital. She showed the nurse bruises on her knees and a clump of hair (which she said the defendant had pulled from her head). Subsequent testing of the rape kit evidence yielded deoxyribonucleic acid (DNA) samples consistent with the defendant's DNA.

The defendant's version of events was that the complainant was a prostitute who had falsely accused him of rape when he had been unable to pay her the agreed price for consensual intercourse. He testified that he had arrived at the bar around 9:30 P.M. At some point, he had gone over to the complainant and offered to buy her a drink. She declined, as she already had a beer, but asked him if he "wanted a date," which he understood to be an offer of sex in exchange for money. She told him that she would be leaving after she finished her beer and that they would meet outside. Later on, when the complainant headed to the door to leave, she turned and winked at him, which he understood as the signal to follow her. After a brief discussion about where they could go, they proceeded across the street and down the stairwell. He inquired about price, and the complainant told him that her price depended on "what [he] wanted." He indicated that he wanted oral sex, and she got down on her knees and began to perform oral sex on him.

---

[2]The complainant also testified that she telephoned her boy friend, telling him that she had been raped. However, on cross-examination she testified that her boy friend was already at the bar when she returned.

[3]Neither the complainant nor the bartender telephoned the police. The complainant testified that she would have called the police, but that they arrived before she could do so.

However, when he changed his mind and wanted intercourse, she told him that the price would be higher. He agreed, and they proceeded to engage in vaginal and anal intercourse, with the complainant on her hands and knees. Afterward, when the complainant demanded payment, the defendant gave her the small amount of money he had left in his pocket and told her that he would have to owe her the rest. A loud argument ensued, and the complainant headed back toward the bar, with the defendant following her, both of them yelling and screaming. Back in the bar, when he heard the complainant saying that she had been raped, he told the bartender that he had not raped her and that she was just angry because she had not been paid. He admitted struggling with the officers (and that he bit one of them) when they later arrested him. He also claimed that when the arresting officer told him he was being arrested for rape, he explained again that the complainant was just angry because she had not been paid.

2. *Discussion.* a. *Impeachment of the complainant by prior conviction as a common nightwalker.* Prior to trial, the Commonwealth filed a motion in limine based on the rape-shield statute, G. L. c. 233, § 21B, seeking to exclude the complainant's "sexual history," including the fact that she had "been convicted of prostitution in the past." The defendant opposed the motion, arguing that he should be allowed to introduce the complainant's prior convictions for the purpose of impeaching her. See G. L. c. 233, § 21. On May 24, 2002, the complainant had been convicted of being a common nightwalker, G. L. c. 272, § 53, for which a fine of one hundred dollars had been imposed. She also had two earlier convictions of common nightwalking in 1999 and 2001, and had been placed on probation for both of those offenses. The judge allowed the Commonwealth's motion in limine with respect to the common nightwalker convictions, on the ground that they were precluded by the rape-shield statute. He also noted that, irrespective of the rape-shield statute, only one of the common nightwalking convictions (the 2002 conviction that resulted in a fine) would satisfy the prerequisites for introduction under G. L. c. 233,

§ 21, First.[4] He later articulated the view that in light of the rape-shield statute and *Houston, supra,* he was required to exclude that conviction, and that he had exercised no discretion in deciding to exclude it. He did allow the defendant to impeach the complainant with a prior conviction of a nonsexual offense, specifically, a 1997 conviction of larceny of property over $250.

On appeal, the defendant contends that a judge should have discretion to admit evidence of a complaining witness's conviction of a prior sexual offense for purposes of impeaching that witness, G. L. c. 233, § 21, notwithstanding the rape-shield statute's prohibition against admitting evidence of a sexual assault victim's "sexual conduct," G. L. c. 233, § 21B. The court identified the potential conflict between these two statutes in *Commonwealth* v. *Joyce,* 382 Mass. 222, 231 n.8 (1981), but declined to decide the question. The court confronted the issue directly in *Houston, supra,* but were equally divided as to how the competing requirements of the two statutes should be resolved. Compare *id.* at 623-626 (Marshall, C.J., concurring) (§ 21 does not allow impeachment by conviction of sexual offense committed by witness entitled to protection of rape-shield statute), with *id.* at 626-629 (Lynch, J., concurring) (judges have discretion to admit evidence of such convictions under § 21, but should consider policies underlying rape-shield statute when exercising that discretion), and *id.* at 629-632 (Cowin, J., concurring) (same).

The parties have briefed extensively their respective interpretations of *Houston,* with varying views as to how the procedural history and status of that case should have caused the judge to follow one or the other of the concurring opinions. We need not resolve the arguments about how *Houston* itself should have been applied, as we are prepared to decide the issue that divided the court in *Houston.* We agree with the reasoning of the concurring opinions of Justice Lynch, *id.* at 626-629, and Justice Cowin, *id.* at 629-632, and hold that a judge has discretion to allow impeachment of a sexual assault complain-

---

[4]The two earlier convictions had resulted in probation, which does not qualify as a "sentence" for purposes of a misdemeanor conviction offered under G. L. c. 233, § 21, First. See *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 259 (1985), and cases cited.

ant by prior convictions of sexual offenses, but that in exercising that discretion, the purposes of the rape-shield statute should be considered.

We begin with a brief overview of the two statutes involved. Under G. L. c. 233, § 21, a witness's prior criminal conviction "may be shown to affect [the witness's] credibility." The theory underlying § 21 is that a witness's "earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath." *Commonwealth* v. *Fano*, 400 Mass. 296, 302-303 (1987), quoting *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608 (1986). "One who has been convicted of crime is presumed to be less worthy of belief than one who has not been so convicted." *Brillante* v. *R.W. Granger & Sons*, 55 Mass. App. Ct. 542, 545 (2002), quoting *Labrie* v. *Midwood*, 273 Mass. 578, 582 (1931). Thus, while we do not allow a witness to be impeached by evidence of prior bad acts, if those bad acts have resulted in a conviction, the conviction itself may be admissible under § 21. See *Commonwealth* v. *Bregoli*, 431 Mass. 265, 275 (2000); *Commonwealth* v. *Atkins*, 386 Mass. 593, 600 (1982); *Commonwealth* v. *Clifford*, 374 Mass. 293, 305 (1978); P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 6.10.3, at 329-330 (7th ed. 1999).

In order to be admissible for impeachment purposes, the convictions in question must meet specific requirements based on the degree of the offense (felony or misdemeanor), the nature of the disposition, and the timing and sequence of the convictions. G. L. c. 233, § 21. Even where a particular conviction meets those requirements, a judge has discretion to exclude evidence of the conviction.[5] *Commonwealth* v. *Maguire*, 392 Mass. 466, 469-470 (1984). In the exercise of that discretion, the judge is to consider whether the "danger of unfair prejudice outweigh[s] the probative value of the evidence of a prior conviction for the purposes of impeachment." *Id.* at 470. See *Commonwealth* v. *Knight*, 392 Mass. 192, 194 (1984); *Com-*

---

[5] The exercise of discretion is not limited to cases involving admission of a defendant's prior conviction, but extends as well to the proffered admission of the conviction of any witness. See *Houston, supra* at 623-624 n.9 (Marshall, C.J., concurring), and cases cited; *Commonwealth* v. *Manning*, 47 Mass. App. Ct. 923 (1999); *Commonwealth* v. *Gore*, 20 Mass. App. Ct. 960, 961-962 (1985).

*monwealth* v. *Chase*, 372 Mass. 736, 750 (1977). Where the judge decides to allow introduction of a prior conviction under § 21, the potential prejudice may be ameliorated by an appropriate limiting instruction. See *Commonwealth* v. *Paulding*, 438 Mass. 1, 12 (2002); *Commonwealth* v. *Drumgold*, 423 Mass. 230, 250 (1996); *Commonwealth* v. *Maguire, supra.*

The rape-shield statute, G. L. c. 233, § 21B, is applicable to proceedings involving certain sexual offenses.[6] The statute precludes admission of evidence of a victim's "reputation" with respect to "sexual conduct," as well as "[e]vidence of specific instances of a victim's sexual conduct . . . ." *Id.* The statute creates two exceptions to that prohibition, allowing "evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim." *Id.* In order for a defendant to introduce such evidence pursuant to either of those exceptions, the judge must first hold a hearing on the defendant's motion and offer of proof, and make a finding that "the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim." *Id.* In addition to the exceptions set forth in the statute, we have ruled that a defendant may introduce evidence of the complaining witness's sexual conduct where that conduct is relevant to the complainant's bias or motive to fabricate. *Commonwealth* v. *Joyce, supra* at 227-229. However, even when offered to show bias or motive to lie, the judge should exercise discretion with respect to the introduction of such evidence, bearing in mind "the important policies underlying the [r]ape-[s]hield statute." *Id.* at 231. See *id.* at 232-233 (Braucher, J., concurring) (consistent with rape-shield statute, judge should hold hearing on evidence of sexual conduct offered to show motive for false accusation, and determine whether weight and relevance of evidence outweighs prejudicial effect).

[6]Specifically, it applies to proceedings charging rape or aggravated rape (G. L. c. 265, § 22), assault with intent to rape (G. L. c. 265, § 24), indecent assault and battery (G. L. c. 265, § 13H), rape of a child (G. L. c. 265, § 23), rape of a child by force (G. L. c. 265, § 22A), assault with intent to rape a child (G. L. c. 265, § 24B), indecent assault and battery on a child (G. L. c. 265, § 13B), and indecent assault and battery on a mentally retarded person (G. L. c. 265, § 13F). G. L. c. 233, § 21B.

The rape-shield statute comports with the common-law rule that a complainant's sexual intercourse with persons other than the defendant is inadmissible. See *Commonwealth* v. *Gouveia,* 371 Mass. 566, 569 (1976); *Commonwealth* v. *McKay,* 363 Mass. 220, 226 (1973); *Commonwealth* v. *Regan,* 105 Mass. 593 (1870). The innovation in the rape-shield statute was not its prohibition of evidence pertaining to "specific instances" of a complainant's sexual conduct, as that evidence was already precluded at common law. Rather, what the statute added was the prohibition of evidence of the complainant's "reputation" in such matters. *Commonwealth* v. *Joyce, supra* at 227-228. A complainant's "reputation for unchastity" had been admissible at common law and had been viewed as probative of the complainant's consent. *Id.* See *Commonwealth* v. *Gouveia, supra; Commonwealth* v. *Manning,* 367 Mass. 605, 610 (1975); *Commonwealth* v. *McKay, supra; Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966); *Commonwealth* v. *Harris,* 131 Mass. 336 (1881); *Commonwealth* v. *Kendall,* 113 Mass. 210 (1873). The common-law rule, which prohibits evidence of specific instances of sexual conduct while allowing "reputation" evidence on the same subject, was the product of a strong common-law tradition that allowed proof of character to be introduced solely by means of "reputation" evidence. See, e.g., *Commonwealth* v. *O'Brien,* 119 Mass. 342, 344-347 (1876). Under that approach, a rape complainant's "unchaste character" was relevant and could be shown by evidence of her reputation (*Commonwealth* v. *Kendall, supra*), but that character could not be shown by introducing evidence of, for example, a specific adulterous affair (*Commonwealth* v. *Harris, supra*). The rape-shield statute operates to exclude all such evidence, whether in the form of "specific instances" of sexual conduct or in the form of "reputation" evidence.

The common-law rule excluding evidence of the complainant's specific sexual conduct with others, and the rape-shield statute that later codified that aspect of the common-law rule, was premised on the fact that "such evidence has little probative value on the issue of consent." *Commonwealth* v. *Joyce, supra* at 227. See *Commonwealth* v. *McKay, supra* at 227 ("victim's consent to intercourse with one man does not imply

her consent in the case of another"). The rape-shield statute also prevents an array of adverse effects on the complaining witness and the process of the trial. Introduction of evidence concerning the complainant's sexual past "would prolong the trial and divert the attention of the trier of fact from the alleged criminal acts of the defendant." *Commonwealth* v. *Joyce, supra.* In addition, "inquiries into the sexual history of the rape complainant chills her willingness to testify." *Id.* at 228. "Rape-shield statutes are 'aimed at eliminating a common defense strategy of trying the complaining witness rather than the defendant. The result of this strategy was harassment and further humiliation of the victim as well as discouraging victims of rape from reporting the crimes to law enforcement authorities.' " *Id.*, quoting *State* v. *Williams*, 224 Kan. 468, 470 (1978). See *Houston, supra* at 621 (Marshall, C.J., concurring) (rationale underlying rape-shield statute "is that evidence of the victim's prior sexual conduct might divert attention from the alleged criminal acts of the defendant, inappropriately putting the victim on trial").

We now confront the issue of how to harmonize these two statutes when the prior conviction that the defendant seeks to introduce for impeachment purposes under § 21 is for a sexual offense, and thus overlaps with the § 21B prohibition against introduction of the complaining witness's "sexual conduct." The Commonwealth argues that § 21B, being the more recent[7] and the more specific of the two statutes, controls. See *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 215-216 (1997); 2B N.J. Singer, Sutherland Statutory Construction § 51.02, at 193,

---

[7]Section 21B was enacted in 1977 (St. 1977, c. 110), whereas § 21 dates back to a Nineteenth Century codification of a common-law rule. See Rev. St. (1836) c. 94, § 56; St. 1851, c. 233, § 97. At common law, a witness was not permitted to testify if he had been convicted of an "infamous" crime, the theory being that such a conviction made him "unworthy of credit for truth." *Utley* v. *Merrick*, 11 Met. 302, 302 (1846). The 1836 statute codified that common-law rule, but provided an exception permitting a witness who had been convicted in another State to testify, subject, however, to impeachment with evidence of that out-of-State conviction.

Statute 1851, c. 233, § 97, eliminated the 1836 statute's witness exclusion rule. It amended what had been the common law, permitting (for the first time) a witness to testify even if the witness previously had been convicted of an "infamous" crime in Massachusetts. *Utley* v. *Merrick, supra.* The 1851 statute simultaneously adopted the approach of the 1836 statute, permitting

194 (6th ed. 2000). The canon of statutory construction has been correctly identified, but its application to these two statutes is problematic. While the rape-shield statute was not enacted until 1977 (St. 1977, c. 110), the prohibition against introduction of "specific instances" of a complainant's sexual conduct was not new. As discussed above, that aspect of the statute simply restated a rule at common law. It was not a "recent" innovation when § 21B was enacted, but rather a common-law rule that had coexisted with § 21 for over a century.[8]

Moreover, it is difficult to define which of the two statutes is

---

the credibility of such a witness to be impeached by his convictions.

Later amendments each carried forward the substance of the 1851 statute, but made certain classes of convictions inadmissible for impeachment purposes. See, e.g., St. 1913, c. 81 (making certain misdemeanor convictions inadmissible); St. 1914, c. 406 (making certain felony convictions inadmissible); St. 1974, c. 502 (making certain traffic violations inadmissible).

[8]As a legislative enactment making certain evidence admissible, § 21 and its predecessor statutes superseded any prior common-law evidentiary rule excluding such evidence. Thus, a statement in 1846 to the effect that evidence of a witness's prostitution was inadmissible to impeach her, *Commonwealth* v. *Churchill*, 11 Met. 538, 539 (1846) (see *post* at 739 n.1 (see *post* at 734 n. 1), would not take precedence over a statute enacted five years later that made "any" criminal conviction admissible to impeach a witness. St. 1851, c. 233, § 97. After that statute's enactment, this court repeatedly stressed that it made "any" conviction admissible for impeachment, without regard to whether the particular conviction would have been admissible at common law, and without regard to the court's view as to whether a specific conviction was particularly germane to credibility. "The statute puts all convictions of crime on the same footing, — those which would formerly have excluded a witness, those which have heretofore gone to credibility, *and those which formerly would not have been admissible at all*" (emphasis added). *Quigley* v. *Turner*, 150 Mass. 108, 109 (1889). See *Commonwealth* v. *Hall*, 4 Allen 305, 306-307 (1862) (statute allowed impeachment by conviction of "keeping a house of ill fame," rejecting argument that conviction could only be introduced if it would previously have rendered witness incompetent to testify). Thus, while the court still expressed its own view that evidence of a witness's sexual conduct would not be admissible to impeach her, the court simultaneously acknowledged that, under the statute, a *conviction* would nevertheless be admissible. See *Commonwealth* v. *Vandenhecke*, 248 Mass. 403, 404-405 (1924).

It was only when the rape-shield statute was enacted in 1977, prohibiting the introduction of all such evidence under any rubric, that the prior common-law rule barring introduction of specific incidents of sexual conduct was placed on a par with the statute allowing convictions to be used for impeachment, and thus gave rise to the interpretive dilemma this court recognized in *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 n.8 (1981).

the more "specific" and which is the more "general." Section 21 is "general" in the sense that it applies to all criminal trials, whereas § 21B is more "specific" in applying only to prosecutions for particular offenses. However, § 21 is far more "specific" with respect to what it covers (the use of certain convictions meeting particular requirements for the single purpose of impeachment, and only if the judge's exercise of discretion allows it), whereas § 21B addresses the admissibility for any purpose of anything that would come within the ambit of "sexual conduct."

Rather than mechanically applying the concept that the more "recent" or more "specific" statute (whichever one that is) trumps the other, we should endeavor to harmonize the two statutes so that the policies underlying both may be honored. Implied repeal of a statute is disfavored, and we should not impliedly repeal a portion of § 21 unless it "is so repugnant to, and inconsistent with, the later enactment [§ 21B] that both cannot stand." *LaBranche* v. *A.J. Lane & Co.*, 404 Mass. 725, 728 (1989), quoting *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984). See *Houston, supra* at 628 (Lynch, J., concurring), and cases cited. Given that the common-law rule excluding evidence of a complainant's sexual conduct had long operated in tandem with impeachment by way of convictions under § 21, see note 8, *supra*, we do not believe that the mere codification of that common-law rule in § 21B suddenly makes it impossible for it to stand alongside § 21. Moreover, "[a] statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to that effect or of clear implication." *Commonwealth* v. *Hayes*, 372 Mass. 505, 512 (1977), quoting *Colt* v. *Fradkin*, 361 Mass. 447, 449-450 (1972). Here, we encounter legislative silence on how these two statutes should relate to each other, not "express words" or "clear implication" that § 21B is to be given priority over § 21.[9]

As we attempt to harmonize these statutes, it is not for us to

___

[9]The scant legislative history available does not provide any such clear signal on the subject. From the fact that § 21B was ultimately modeled on the Senate version of the bill (which had no reference to the use of convictions, see 1977 Senate Doc. No. 752), instead of any of the proposed versions in the House (which expressly referenced, in differing terms, the use of convictions

Commonwealth *v.* Harris.

determine which of them is more weighty or worthwhile and to allow that statute to dominate.[10] Instead, we must seek to apply them in a manner that, to the greatest extent possible, serves the policies underlying both. Resort to the sound exercise of the trial judge's discretion, which is already a prerequisite to any introduction of prior convictions as impeachment evidence under § 21, allows for consideration of the purposes of both statutes. This approach reconciles the competing interests of the two statutes by carving out an extremely narrow exception to § 21B, an exception that will be allowed only where the sexual conduct in question has led to a criminal conviction, the convic-

for purposes of impeachment, see 1977 House Doc. Nos. 2228, 2586, and 4133), the dissent claims to have discerned the Legislature's intent. *Post* at 735-737. We cannot identify the multitude of possible reasons why any particular proposed legislation was not enacted, and certainly cannot conclude that those unknown and unstated reasons amount to a "clear implication" favoring implied repeal of another statute. *Commonwealth* v. *Hayes*, 372 Mass. 505, 512 (1977), quoting *Colt* v. *Fradkin*, 361 Mass. 447, 449-450 (1972).

Nor can such an intent be gleaned from a statement in a press release. *Post* at 736 n.5, 737 n.6. The statement in question was made in *criticism* of the pending legislation, not in support of it. The chairman of the House Judiciary Committee "questioned whether the bill was workable," and opined that "there were too many instances where it could create greater harm than justice." State House News Service Press Release, Feb. 18, 1977. To illustrate the perceived "harm" in the proposed rape-shield bills, the Chairman asked, "What are we going to do about the person who's screwing all over town?," and noted that "some prostitutes would be able to use the law to claim they were raped." *Id.* It has long been observed that critics and opponents of legislation are a particularly poor source for insight into the meaning and scope of a statute, as "they understandably tend to overstate its reach." *NLRB* v. *Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 66 (1964). See *Ernst & Ernst* v. *Hochfelder*, 425 U.S. 185, 203-204 n.24 (1976); *United States* v. *Calamaro*, 354 U.S. 351, 357-358 n.9 (1957); *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U.S. 384, 394-395 (1951); *United States* v. *International Union of Operating Eng'rs, Local 701*, 638 F.2d 1161, 1168 (9th Cir. 1979). To the extent that the Chairman "ultimately supported" the particular rape-shield legislation that was enacted (see *post* at 736 n.5), that may signify that he was later convinced that that version of the bill was not as far reaching as he had feared. Whatever weight we should give to the chairman's apparent dismay that a rape-shield statute would enable prostitutes to claim they were raped, nothing in his statement — or anywhere else in the press release — addresses the specific issue of the use of convictions.

[10]That is the approach adopted by the dissent, which views a conviction of prostitution to have "little — or nonexistent — probative value," whereas the rape-shield statute combats "prejudice against . . . rape victims." *Post* at 737.

tion in turn meets all the technical requirements of § 21,[11] and the judge is satisfied that the probative value of the conviction for purposes of impeaching the complainant outweighs the prejudice to the Commonwealth and the complainant. See *Houston, supra* at 631 (Cowin, J., concurring). The alternative, a complete prohibition on the impeachment use of convictions of *any* sex-related offense (a prohibition that would not be limited to convictions involving prostitution), would constitute a much larger and totally inflexible exception to § 21. We have neither "express words" nor a "clear implication" suggesting that § 21B was intended to supersede § 21 in that complete fashion. *Commonwealth* v. *Hayes, supra.*

When the prior conviction is of a sexual offense and is being offered to impeach the complaining witness in a sexual assault case, the judge's consideration of the "prejudicial effect" of introducing the conviction should take into account the important policies underlying the rape-shield statute.[12] See *Houston, supra* at 629 (Lynch, J., concurring); *id.* at 632 (Cowin, J., concurring). The judge should thus consider the potential that

---

[11]Many convictions for prostitution-related offenses will not satisfy those requirements. In the present case, two of the complainant's three convictions as a common nightwalker failed to satisfy the prerequisites for admission because they had resulted in probation, not in a "sentence." See note 4, *supra.*

[12]We note that certain policies underlying the rape-shield statute are not at issue in the admission of prior convictions under § 21. With respect to evidence of prior convictions, there is no potential that such evidence will "prolong the trial" by a diversion into the prior incidents, *Commonwealth* v. *Joyce*, 382 Mass. 222, 227 (1981), nor that the witness will be required to relate any embarrassing details of those incidents. When a conviction is introduced under § 21, all that is introduced is the fact of the conviction — neither side may seek to introduce the particulars of how the offense was committed or the circumstances surrounding it. See *Commonwealth* v. *McGeoghean*, 412 Mass. 839, 843 (1992), and cases cited; *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 152-153 (1999). Instead, the evidence of prior convictions is extremely brief and is introduced in almost clinical fashion, usually just a single question asking the witness to acknowledge the date, the court, and the technical term for the offense committed. Allowing defense counsel to introduce a complainant's prior conviction of a sex-related offense does not create an effective opportunity to divert the jury's attention or to make the complainant run an embarrassing gauntlet of questions about her sex life.

Nor does the introduction of a witness's conviction of a sexual offense constitute an "invasion[] of privacy." *Houston, supra* at 626 n.13 (Marshall,

the jury may misuse the conviction of a sexual offense as indicative of the complaining witness's consent, and the risk that the complaining witness may be subjected to needless humiliation.[13] Under today's ruling, the rape-shield statute remains as an important protection for rape victims, including those who happen to be prostitutes — neither the facts surrounding their sexual conduct nor their reputation in such matters is admissible, and even if a complainant's prior conviction of prostitution satisfies all the technical prerequisites of § 21 (see note 11, *supra*), the judge must consider the policies to be promoted by the rape-shield statute and may exclude the conviction due to those policy considerations. We see no reason to fear that trial judges will be insensitive to these concerns, that they will exercise their discretion in ways that will "eviscerate[]" the rape-shield statute, or that they will be heedless of the particular prejudice at issue where the complainant's prior conviction is related to prostitution. *Post* at 739.

The judge below thus erred in declining to exercise any discretion when ruling on the Commonwealth's motion in

C.J., concurring). Ordinarily, delving into "specific instances" of a witness's sexual conduct would unquestionably intrude on intimate aspects of the witness's private life, but if that sexual conduct is itself a violation of the criminal laws and has resulted in a criminal conviction, it is no longer a "private" matter. The conviction, resting on an accusation that has been made publicly and either proved or admitted in open court, is instead a matter of public record. See *Roe* v. *Attorney Gen.*, 434 Mass. 418, 435 (2001); *Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89, 100-101 (D. Mass. 1993).

[13]The judge should also consider whether the defendant has available other impeachment evidence, in particular, whether there are other convictions of nonsexual offenses that may be used to impeach the complainant. *Houston, supra* at 632 (Cowin, J., concurring). And, as is customary, if the prior conviction is admitted in evidence under § 21, an appropriate limiting instruction should be given. *Id.* We reject the argument that a limiting instruction will be ineffective. Contrast *id.* at 626 (Marshall, C.J., concurring). We have long held that a testifying defendant may be impeached with prior convictions, including convictions of offenses similar to the offense being tried, and we rely on limiting instructions to cure the otherwise obvious prejudice in such situations. See *Commonwealth* v. *Whitman*, 416 Mass. 90, 94-95 (1993); *Commonwealth* v. *Walker*, 401 Mass. 338, 345-346 (1987); *Commonwealth* v. *Boyer*, 400 Mass. 52, 56-59 (1987). If we rely on limiting instructions to guarantee a defendant a fair trial despite the jury's awareness of the defendant's criminal past, we can rely on them to guarantee the Commonwealth and the complainant a fair trial despite the jury's awareness of the complainant's criminal past.

limine. That the exercise of discretion could, had it been undertaken, permissibly have resulted in the same decision to exclude the conviction does not necessarily insulate the error from reversal. See, e.g., *Commonwealth* v. *McFarland*, 15 Mass. App. Ct. 948 (1983) (reversal where judge erroneously believed he had no discretion but to admit defendant's prior convictions, rejecting speculative argument that exercise of discretion would have led to their admission); *Commonwealth* v. *Ruiz*, 22 Mass. App. Ct. 297, 301-305 (1986), *S.C.*, 400 Mass. 214 (1987). Cf. *Commonwealth* v. *Coviello*, 378 Mass. 530, 533-534 & n.8 (1979) (harmless error in judge's failure to exercise discretion with respect to whether conviction could be introduced on direct as opposed to cross-examination). The Commonwealth argues, with considerable force, that the error here was harmless, as the defendant was allowed to introduce the complainant's conviction of a nonsexual offense (her 1997 conviction of larceny of property over $250), thereby permitting him this method of impeachment without trenching on the concerns underlying the rape-shield statute. While a jury's improper use of the complainant's common nightwalker conviction might have been beneficial to the defendant, there is little if any reason to believe that its proper impeachment value alone would have had any effect on the jury's verdict. The defendant argues, however, that the common nightwalker conviction from 2002 was recent, whereas the 1997 larceny conviction was six years old by the time of trial, and that the impeachment power of two convictions combined would be greater than the power of a single, and somewhat old, offense. We need not resolve the parties' arguments with respect to whether this error alone would require reversal, as, for the reasons discussed below, there was also error in the prosecutor's closing argument raising a substantial risk of a miscarriage of justice and necessitating a new trial.

b. *Prosecutor's closing argument.* During closing argument, the prosecutor refuted the defense theory of the case by pointing out that there was no evidence that the complaining witness was a prostitute. She further suggested that the complainant was not a prostitute because a prostitute would have known enough to insist on payment in advance and would have had more than

a single customer on the night in question. Leading into this argument, the prosecutor also suggested that the complainant's demeanor on the stand (which had been alluded to during the defense closing) was the product of being falsely accused of being a prostitute.[14] There was no objection. On appeal, the defendant contends that the prosecutor's improper exploitation of the exclusion of evidence under the rape-shield statute gave rise to a substantial risk of a miscarriage of justice. We agree.

Under the rape-shield statute, the defendant was precluded from introducing any evidence of the complainant's history of prostitution. The Commonwealth erroneously suggests that the only evidence that had been excluded under the rape-shield statute was the 2002 common nightwalker conviction that the defendant sought to introduce as impeachment evidence. While that was the sole evidence the defendant sought to introduce, it was not the entirety of the evidence that would have been available to the defendant, but for the prohibition codified in the rape-shield statute. At a minimum, the three Lowell District Court convictions of common nightwalking (the most recent of which stemmed from an arrest just two weeks after the alleged rape) would have given defense counsel a good faith basis to

---

[14]The prosecutor's closing included the following:

"Now, you saw [the complainant] get upset on the stand. And what did she get upset on the stand about?

"She got upset about being called a prostitute. Here she is being brutally raped, being kidnapped, being assaulted by this defendant. She has to go through all of this. She has to come into court. She has to tell all of this stuff to you in open court and she's being called a prostitute?

"Now, what evidence do we have that [the complainant] was a prostitute, 'cause, let me tell you, if [the complainant] was a prostituting [*sic*] this night, she's a really bad prostitute. If someone is a prostitute and that's their business and that's how they make their money, do you think they're going to get their money up front? Do you think they're just going to believe some guy that they meet in the bar that he's going to pay them later; or, do you think they're going to ask for their money up front?

"If someone's a prostitute, do you think they're going to be sitting at a bar all night, or they're only going to have one customer?

"Do you think she's actually going to be observed by maybe the bartender, maybe some other people in the bar to be getting up, going outside for a short period of time, coming back, getting up, going outside for a short period of time, coming back? No. She was there as a customer. She's sitting at the bar. She was not acting as a prostitute."

ask the complainant about her experience as a prostitute in the area. Fully cognizant of the limitations imposed by the rape-shield statute (as indicated by the prior proceedings on the motion in limine), defense counsel had appropriately refrained from introducing evidence of or alluding to the complainant's history of prostitution.

It was improper for the prosecutor to suggest to the jury that the absence of any evidence that the complainant engaged in prostitution meant that she was not a prostitute. The Commonwealth contends that all the prosecutor was referring to was the absence of any evidence that the complainant was engaged in prostitution "on the night in question." While some of the argument did include references to the complainant's behavior "this night," the context, as reasonably understood by the jury, went beyond the confines of that specific night. At the outset, the prosecutor sought to explain the complainant's demeanor on the stand by invoking a sense of righteous indignation that she would be called a prostitute, suggesting to the jury that what they had seen was an emotional reaction to the ostensible falsity of that offensive label. At the time she made that argument, the prosecutor knew that the label was in fact accurate, and that prosecutors in her own office had proved its accuracy on three separate occasions. Immediately thereafter, the prosecutor asked the jury "what evidence" they had before them that would indicate that the complainant was a prostitute, thereby offering an open invitation to consider the absence of evidence on the entire subject. The prosecutor's next line of argument, the implausibility that a prostitute would fail to ask for payment in advance, was legitimately linked to the specific events of that night, but was phrased in a way that, following on the heels of the previous improper argument, suggested to the jury that the complainant could not have been a prostitute because no experienced prostitute would conduct business that way. Similarly, the references to the complainant's remaining at the bar (without having been seen going in and out) would properly relate to the night in question, but that proper argument would take on further meaning from the prior improper argument — it was but one example of the lack of any evidence to show that the complainant engaged in prostitution at all. The over-all mes-

sage to the jury from this entire line of argument was that the defendant's testimony concerning the incident was the only evidence they had of the complainant's prostitution and that, in the absence of any other evidence to corroborate his claim that she was a prostitute, the defense theory was not worthy of belief.

Counsel may not, in closing, "exploit[] the absence of evidence that had been excluded at his request." *Commonwealth v. Carroll*, 439 Mass. 547, 555 (2003). Such exploitation of absent, excluded evidence is "fundamentally unfair" and "reprehensible." *Commonwealth v. Haraldstad*, 16 Mass. App. Ct. 565, 568 (1983). "[A] party's success in excluding evidence from the consideration of the jury does not later give that party license to invite inferences (whether true or, as in this case, false) regarding the excluded evidence." *Commonwealth v. Mosby*, 11 Mass. App. Ct. 1, 9 (1980). As illustrated by the Commonwealth's motion in limine, the Commonwealth objected to introduction of any evidence that would link the complainant to prior acts of prostitution. Having succeeded in excluding all such evidence, the prosecutor could not then ask the jury to infer that the absence of such evidence meant that the complainant could not be a prostitute. The argument was improper.

In determining whether an error in closing argument requires reversal, we consider whether defense counsel made a timely objection; whether the judge's instructions mitigated the error; whether the error was central to the issues at trial or concerned only collateral matters; whether the jury would be able to sort out any excessive claims or hyperbole; and whether the Commonwealth's case was so strong that the error would cause no prejudice. *Commonwealth v. Santiago*, 425 Mass. 491, 500 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998), and cases cited. Here, there was no objection, but that is the only factor that favors the Commonwealth. All of the remaining factors support the defendant's claim for a new trial. The judge's standard instructions to the effect that closing arguments were not evidence and that the jury's verdict had to be based solely on the evidence would not ameliorate the prosecutor's improper reference to the absence of evidence concerning the victim's experience as a

prostitute. The error went to the entire crux of the defense, and indeed was directed at the principal disputed issue at trial. The nature of the error was not something that the jury could, on their own, put in perspective and ignore — the jury were presumably ignorant of the fact that the defendant had been precluded from introducing any evidence of the complainant's prior sexual conduct or reputation. Finally, although the Commonwealth's case was strong,[15] it was not "so overwhelming that the error[] did not prejudice the defendant." *Id.*, citing *Commonwealth* v. *Clary*, 388 Mass. 583, 591 (1983). On balance, we conclude that this erroneous argument created a substantial risk of a miscarriage of justice, and we therefore order a new trial.

3. *Conclusion.* For the foregoing reasons, the convictions of assault and battery on a public employee and resisting arrest are affirmed (see note 1, *supra*). The remaining convictions are reversed, the verdicts set aside, and the matter is remanded for a new trial. On retrial, if the defendant seeks to impeach the complainant with evidence of a prior conviction of a sex-related offense, the judge should exercise discretion with respect to the admission or exclusion of that impeachment evidence under G. L. c. 233, § 21, and that exercise of discretion should include consideration of the purposes underlying the rape-shield statute, G. L. c. 233, § 21B.

*So ordered.*

MARSHALL, C.J. (concurring in part and dissenting in part, with whom Greaney, J., joins). I concur with the court's conclusion that the defendant is entitled to a new trial because the prosecutor's closing argument was improper. I respectfully dis-

---

[15]The Commonwealth points in particular to the tape recording of the 911 call to the police (which was admitted substantively as a spontaneous utterance), contending that the caller's version of a man chasing after a fleeing woman was inconsistent with the defendant's version of the two merely arguing as they returned to the bar. However, as the Commonwealth's closing argument acknowledged, the quality of the tape recording of that 911 call was "pretty poor" and would require repeated listening to decipher. Defense counsel's closing argument also asked the jury to listen to the tape recording, contending that the tape contained evidence of "argument back and forth" between the defendant and the complainant, consistent with the defendant's version.

sent from so much of the court's opinion as gives a trial judge discretion to admit in evidence a rape complainant's past conviction of a crime involving sexual conduct solely for the purpose of impeaching her credibility.

In *Commonwealth* v. *Houston*, 430 Mass. 616 (2000), I noted that "the Commonwealth's legitimate interest in protecting rape victims sets an important limit on a judge's discretionary authority to admit prior convictions submitted generally to impeach a complainant witness." *Id.* at 621 (Marshall, C.J., concurring). It has always done so, both before and after the enactment of the general impeachment statute, G. L. c. 233, § 21, and its predecessor statutes.

Today, the court concludes that juries will be permitted to infer that an alleged rape victim is more likely to be fabricating an accusation of rape because she has been convicted of a crime involving sexual conduct, such as being a "common nightwalker." The court reasons that the Legislature, in enacting the rape-shield statute, G. L. c. 233, § 21B, inserted by St. 1977, c. 110, gave no "clear implication" that it intended to prohibit such use of an alleged rape victim's past conviction. *Ante* at 725. I disagree. The legislative intent to that effect could not be more clear. Moreover, the rape-shield statute is a specific statute, adopted later in time than the impeachment statute, G. L. c. 233, § 21, and with a clear purpose. To the extent that any provision of the 1977 rape-shield statute conflicts with the Nineteenth Century general impeachment statute, well-settled principles of statutory construction require that the more recent statute be given full effect.

As to legislative history, when the rape-shield statute was under consideration in 1977, the Legislature affirmatively chose *not* to permit impeachment of alleged rape victims by evidence of sexual conduct convictions. For more than one century it had been the established law of this Commonwealth that the credibility of an alleged rape victim may not be challenged simply because she had previously engaged in specific acts of sexual intercourse.[1] The explanation for our rule was straightforward: "the victim's consent to [sexual] intercourse with one man does

---

[1] In 1846, Chief Justice Shaw repudiated the then prevailing doctrine that "evidence is admissible to impeach the credibility of a female witness, which

not imply her consent in the case of another." *Commonwealth* v. *McKay*, 363 Mass. 220, 227 (1973). The common law had been reaffirmed by this court just four months before enactment of the rape-shield statute, so there was no question as to its continued vitality. See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 569 (1976) (prohibiting introduction of "evidence of instances of prior [sexual] intercourse of the victim"). When the common-law evidentiary rule prohibiting the introduction of "evidence of instances of prior [sexual] intercourse with other persons," *Commonwealth* v. *Gardner*, 350 Mass. 664, 668 (1966), was codified by the Legislature in the 1977 rape-shield statute,[2] the Legislature included within that prohibition *all* "specific instances" of sexual conduct. It did not create any exception for those "instances" of sexual conduct evidenced by a rape victim's conviction. To the contrary, the Legislature considered, but rejected, several bills that would have permitted a rape complainant to be impeached by a conviction of prostitution or other criminal sexual conduct.

Specifically, in early 1977, the Senate referred to its Committee on the Judiciary four "rape-shield" bills. Three of the bills had originated in the House; all three contained an exception to the rape-shield provisions that would have *permitted* impeachment of a rape complainant by her prior convictions.[3] The fourth bill, which had originated in the Senate, contained no such exception. See 1977 Senate Doc. No. 752. The subsequently enacted statute did not include the exceptions contained in each of the three House bills that would have permitted rape complainants to be impeached by their prior convictions. See

tends to show that she is, and for some time has been, a common prostitute." *Commonwealth* v. *Churchill*, 11 Met. 538, 539 (1846).

[2] The reference in the rape-shield statute, G. L. c. 233, § 21B, to evidence of "specific instances" of a victim's sexual conduct, employing almost the precise language used by this court in *Commonwealth* v. *Gouveia*, 371 Mass. 566, 569 (1976), and *Commonwealth* v. *Gardner*, 350 Mass. 664, 668 (1966), confirms that the 1977 statute codified the common law.

[3] See 1977 House Doc. No. 2228 ("Nothing in this section shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions"); 1977 House Doc. No. 2586 (same); 1977 House Doc. No. 4133 (allowing "evidence of conviction of a crime of the victim, solely to impeach her credibility").

G. L. c. 233, § 21B; St. 1977, c. 110; 1977 Senate Doc. No. 1433.[4]

The Legislature's decision not to enact the proposed House bills is convincing, if not conclusive, evidence of legislative intent. See *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 556 (1996) (declining to read into statute a provision contained in predecessor bills but omitted from enacted statute). See also 2A N.J. Singer, Sutherland Statutory Construction § 48.04, at 431-433 (6th ed. 2000) ("[W]here the language under question was rejected by the legislature and thus not contained in the statute it provides an indication that the legislature did not want the issue considered"); *Transportation Ins. Co.* v. *Maksyn*, 580 S.W.2d 334, 338 (Tex. 1979) ("The deletion of a provision in a pending bill discloses the legislative intent to reject the proposal. Courts should be slow to put back that which the legislature has rejected"). Contrary to the court's reasoning, *ante* at 725 n.9, the "signal on the subject" from the Legislature is indeed clear: it had before it three bills that would permit impeachment of a complaining witness with a prior conviction of sexual conduct. It rejected all three in favor of a statute that does not permit impeachment by a criminal sexual conduct conviction. The court disregards this clear legislative choice. It creates an exception to the scope of rape-shield statute that the Legislature rejected, substituting its judgment for that of the Legislature on an important matter of social policy.[5] This it may not do. See, e.g., *Commonwealth* v. *Houston*, 430 Mass. 616, 631 (2000) (Cowin, J., concurring) ("The Legislature is the body for enact-

---

[4]The bill as reported by the Senate Committee on the Judiciary was in substance identical to the enacted legislation, but for minor editing. For example, the phrase, "[r]eputation evidence," used in the bill, was changed to "[e]vidence of the reputation" in the enacted statute. Compare 1977 Senate Doc. No. 1433, with St. 1977, c. 110.

[5]The implications of the legislative choice were not in doubt. The chairman of the House Judiciary Committee expressly noted his concern that the proposed bill would protect "prostitutes" who claimed they had been raped. As the court notes, the chairman had remarked, "What are we going to do about the person who's screwing all over town?" The chairman nevertheless ultimately supported the bill as enacted. See State House News Service Press Release, Feb. 18, 1977; Pines, Press Release, Apr. 19, 1977 (coauthor of rape-shield statute expressing "gratitude" to chairman for his "important role[] in the passage of the law").

ing social policy change"). The rape-shield statute should be enforced to exclude the evidence, as the Legislature intended.

The Legislature's 1977 decision not to permit impeachment of an alleged rape victim by a prostitution conviction, for example, was entirely reasonable. In the years leading up to the enactment of the rape-shield statute, reports had described the difficulty of obtaining convictions in rape cases because of court room prejudice against alleged rape victims. See, e.g., H. Kalven, Jr. & H. Zeisel, The American Jury 249-254 (1966) (reporting study finding that juries acquit rape defendants because of the victims' "contributory fault"); Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum. L. Rev. 1, 71 (1977) ("Studies have shown that judges — although less so than jurors — tend to distrust the complaining witness").[6] Prejudice or disbelief occurs with particular intensity when the complainant is a prostitute, and courts have long sought means to minimize jury bias against prostitutes. See, e.g., *Commonwealth* v. *Churchill*, 11 Met. 538, 539 (1846) (evidence of prostitution inadmissible to impeach credibility of female witness). See also *Commonwealth* v. *Vandenhecke*, 248 Mass. 403, 404 (1924) ("The rule is well established that the fact that a female witness is a prostitute or keeps a house of ill fame is not admissible to impeach her"). Prostitutes are frequent victims of rape. See, e.g., Anderson, From Chastity Requirement to Sexuality License: Sexual Consent and a New Rape Shield Law, 70 Geo. Wash. L. Rev. 51, 113 & n.367 (2002) (citing studies substantiating that more than seventy per cent of prostitutes are victims of rape). Yet societal beliefs persist that prostitutes cannot be raped, or that they are not harmed by rape, or that they somehow deserve to be raped. *Id.* at 113-117. In enacting the rape-shield statute, the Legislature could well have recognized that these prejudices outweighed the little — or nonexistent — probative value of a sexual conduct conviction in determining a rape complainant's credibility. The likelihood of a jury impermissibly using such

[6]The coauthor of the rape-shield statute noted that rape was "the fastest growing category of violent crime" in the United States, but that victims were hesitant to testify against their accusers because they risked being "intimidate[d]" and "humiliate[d]" on cross-examination. Pines, Press Release, *supra.*

evidence would outweigh almost inevitably any modicum of impeachment value such a conviction might have. The Legislature considered but decided *not* to reject the "long held view" that prostitution (or evidence of other sexual conduct) simply is not relevant to credibility. *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981), citing *Commonwealth* v. *Vandenhecke, supra.*

General Laws c. 233, § 21, permits the use of a prior conviction solely "to affect [the witness's] credibility." In a case such as this, where the witness is a rape complainant who claims lack of consent, the issue of her credibility mirrors precisely the issue of her consent. The law is settled that a rape complainant's prior instances of sexual conduct are not admissible to prove consent to sexual intercourse. *Commonwealth* v. *Gardner*, 350 Mass. 664, 668 (1966). But if a judge may now permit evidence of an alleged rape victim's prior conviction of criminal sexual conduct to be introduced to impeach her credibility, i.e., to show that she is fabricating her testimony to the effect that she did *not* consent to sexual intercourse, that evidentiary rule is vitiated. And, while in any particular case the evidence of a prior conviction of prostitution or some other sexual offense may be "extremely brief," I cannot regard introduction of that evidence as "almost clinical." *Ante* at 727 n.12. Courts have long recognized the difficulty in persuading juries that prostitutes are the victims of rape. Any evidence that reinforces juror prejudice may be decisive.

Established canons of statutory construction reinforce this conclusion. Application of those principles here is not "problematic," as the court suggests, *ante* at 724, nor would application be merely "mechanical[]." *Ante* at 725. "When a new provision conflicts with a prior statute, the new provision, as the last expression of the Legislature, controls." *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 215 (1997). See 2B N.J. Singer, Sutherland Statutory Construction § 51.02 (6th ed. 2000) ("Where two statutes are involved each of which by its terms applies to the facts before the court, the statute which is the more recent of the two irreconcilably conflicting statutes prevails or one of the statutes can be deemed an exception to the general rule enunciated in the other statute"). The evidence

at issue in this case — conviction of being a common night-walker — is an "instance[] of a victim's sexual conduct" inadmissible under the precise terms of the rape-shield statute. But the general impeachment statute, G. L. c. 233, § 21, would permit a judge to admit the conviction in evidence to impeach the complainant. The rape-shield statute, as the more recent expression of the Legislature's intent, must control so as to exclude the evidence. *Doe* v. *Attorney Gen.*, *supra.* Moreover, when the provisions of two statutes are in conflict, "the more specific provision, particularly where it has been enacted subsequent to a more general rule, applies over the general rule." *Id.* See 2B N.J. Singer, *supra* ("Where a conflict exists the more specific statute controls over the more general one").

There is no need to create artificial constraints — discussing the need to harmonize and alluding to possible implied repeal, *ante* at 725 — to arrive at the result. The rape-shield statute requires that the evidence be excluded. The court's contrary conclusion eviscerates the statute, subverts the Legislature's intent to protect rape victims, and leaves the most vulnerable of victims, almost always women, subject to being put on trial themselves for conduct the Legislature and this court has deemed irrelevant to a jury's consideration. I respectfully dissent.