NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-505

COMMONWEALTH

vs.

ALEX BRITO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a Superior Court jury on two counts of assault and battery by means of a dangerous weapon (a knife), G. L. c. 265, § 15A (b), the defendant appeals. He argues that the judge erred in permitting impeachment of his testimony with two prior drug distribution convictions because the judge did not apply the standard for admissibility of prior bad act evidence. He further argues that a substantial risk of a miscarriage of justice arose when, during cross-examination, one of the victims testified that the defendant said he had "been in jail before"; the defendant declined the judge's offer to strike the testimony and give a curative instruction. We conclude that the judge properly exercised her discretion to admit the prior convictions

under G. L. c. 233, § 21, and no substantial risk of a miscarriage of justice arose from the testimony about the defendant's statement.  Accordingly, we affirm.

Background.  On Saturday evening, March 13, 2021, the victims, brothers Daniel Valerio and Allan Valerio,[1] were working at the Bell in Hand Tavern in Boston.  The defendant entered and ordered a mixed drink from Daniel, who was tending bar.  While drinking, the defendant loudly sang along with music on his headphones, which included profanities.  After another customer complained, Daniel asked the defendant to quiet down.  The defendant stopped for a few minutes, then ordered another drink and resumed singing.

After Daniel again warned him to quiet down, the defendant stood up and confronted Daniel as if looking for a fight.  The defendant punched Daniel in the face.  Daniel punched the defendant back, and he and the defendant tussled and fell to the floor.  Allan intervened and told Daniel to let the defendant go.  Daniel and Allan told the defendant to leave, and the defendant began walking toward the door.  Before the defendant reached the door, he said, "Oh, I'm going to shoot up this place."

---

[1] Because the victims have the same surname, we refer to them by their first names.

The defendant turned and pulled out a knife with a four-inch blade. He advanced toward the victims, yelling repeatedly, "I'm going to kill you." Having heard the victims speak to each other in Spanish, the defendant said in Spanish, "You guys are scared." The defendant stabbed Daniel in the neck and then stabbed Allan on the collarbone and the back. Other bar employees tackled the defendant, and Daniel grabbed the knife and tossed it away.

Police responded, and both victims were treated at a hospital for their injuries. The bar's surveillance video had captured much of the altercation, and a responding officer's body camera captured the police response.

The defendant testified that he had drunk "a little bit too many" drinks, was "unruly" and "obnoxious," and was "wrong" when he punched Daniel, but that he acted out of fear and never meant to hurt anyone. He testified that when he started to leave the bar he realized his mouth was bleeding, so he took the knife out of his pocket, not intending to use it but just to get people to "back away." He admitted he was "yelling" and "rant[ing]" angrily, trying to be the "biggest" and "baddest" person there. The next thing the defendant knew, he was "on the floor" with "several people on [him]." He felt like he was "fighting for [his] life," so he swung his fist, forgetting that the knife was in his hand, and did not remember stabbing either victim.

The jury convicted the defendant of two counts of assault and battery by means of a dangerous weapon, a knife, for stabbing each of the victims. The defendant appeals.

Discussion. 1. Impeachment with prior convictions. The defendant argues that evidence of his prior convictions amounted to impermissible prior bad act evidence. We disagree. The judge did not admit evidence of the conduct underlying those convictions, but rather properly exercised her discretion in permitting the prosecutor to impeach the defendant with the convictions under G. L. c. 233, § 21.

A prior criminal conviction "may be shown to affect [a witness's] credibility." G. L. c. 233, § 21. See Mass. G. Evid. § 609 (2025). "The theory underlying § 21 is that a witness's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath" (quotation and citation omitted). Commonwealth v. Harris, 443 Mass. 714, 720 (2005). "Thus, while we do not allow a witness to be impeached by evidence of prior bad acts, if those bad acts have resulted in a conviction, the conviction itself may be admissible under § 21." Id.

The Commonwealth moved in limine pursuant to G. L. c. 233, § 21, to introduce for impeachment purposes certified convictions of the defendant, and the judge reserved her ruling on the motion until trial. After defense counsel announced that

4

the defendant would testify, the prosecutor offered several convictions, but the judge ruled that they were too similar to the offenses on trial, noting, "even if it qualifies under the statute, I have to balance probative value versus prejudice." The prosecutor then offered the defendant's 2016 and 2018 convictions for distribution of a Class B substance, the latter as a subsequent offense. Defense counsel conceded that those two convictions "fit" within the limits of § 21, but argued that the judge should exercise her discretion to exclude them because of the risk that the jury would consider them as character evidence, or alternatively admit only one of them. The judge ruled to permit the prosecutor to impeach the defendant with the two drug convictions.[2]

Defense counsel elicited from the defendant that he had twice been convicted of distribution of drugs. On cross-examination, the prosecutor elicited that the defendant was the same person who had been convicted of distribution of a Class B substance and of a subsequent offense of the same crime. The judge gave a limiting instruction, cautioning the jury that "[a] prior conviction is not to be considered on the issue of whether

---

[2] No copies of the certified convictions are in the appellate record. The defendant has not argued, in the Superior Court or this court, that the certified convictions did not otherwise meet the requirements of G. L. c. 233, § 21.

5

the defendant has committed the crime of which he's charged here, but simply in connection with assessing his credibility as to what happened." The prosecutor did not mention the convictions in closing.

The defendant argues that the prosecutor failed to "articulate [a] precise non-propensity purpose" for admissibility of the two drug convictions. On the contrary, the prosecutor argued in her motion in limine and during trial that the drug convictions were admissible under G. L. c. 233, § 21 for impeachment purposes. To the extent that the defendant contends that the argument the prosecutor made with respect to the convictions that the judge excluded as unduly similar did not also apply to the drug convictions that the judge ruled admissible, that contention is without merit.

The defendant then argues that the judge's discussion of her obligation to balance probative value versus prejudicial impact applied only to the convictions she had excluded, and not to the drug convictions. The argument is unavailing. The judge's comments, a few moments earlier, that she had consulted the Massachusetts Guide to Evidence and was "balanc[ing] probative value versus prejudice" with respect to the excluded convictions showed that she understood and applied the proper test when she ruled to admit the drug convictions. Contrast Harris, 443 Mass. at 728-729 (judge erred in declining to

6

exercise any discretion).  In discussing the admissibility of the drug convictions, the judge also considered and articulated whether the jury would use them as improper "character evidence."  Cf. Commonwealth v. Samia, 492 Mass. 135, 148 n.8 (2023) (in ruling on admissibility of prior bad acts, "the best practice is for the judge to consider and articulate on the record '"the risk that the jury will ignore the limiting instruction . . ." and use the evidence for an inadmissible purpose, such as propensity'" [citation omitted]).  In those circumstances, we cannot presume that the jury did not follow the judge's limiting instruction.  See Commonwealth v. Collins, 496 Mass. 151, 157 (2025).

Without citing to G. L. c. 233, § 21, or arguing that the drug convictions were not admissible for impeachment under that statute, the defendant argues that the evidence of the convictions did not meet the standard for admissibility as prior bad acts.  Passing over the point that the defendant did not argue before the trial judge that she should apply the "more exacting evidentiary standard" applicable to prior bad acts, Commonwealth v. Proia, 92 Mass. App. Ct. 824, 828 (2018), we note that the § 21 standard is different, and was met here.  The defendant was not "impeached by evidence of prior bad acts"; rather, because "those bad acts have resulted in a conviction,

7

the conviction itself [was] admissible under § 21." Harris, 443 Mass. at 720.

2. Victim's testimony that the defendant said he had "been in jail before." The defendant argues that a substantial risk of a miscarriage of justice arose when, unprompted, Allan testified on cross-examination that just before the stabbings the defendant said that he had "been in jail before." After eliciting that the defendant was near the exit when Allan saw him take out the knife, defense counsel said, "All right," and Allan continued: "[B]efore he takes out the knife, he said, 'Oh, I'm going to shoot up this place.' And something that I didn't mention when [the prosecutor] was asking me questions, he said, 'Oh, I've been in jail before'" (emphasis added).

The judge immediately called counsel to sidebar. The prosecutor asked the judge to strike the testimony and give a curative instruction. Defense counsel said that he was "a little on the fence" and wanted to "think for a moment," and so the judge suggested that he finish his cross-examination.

After cross-examination finished, the judge again called counsel to sidebar, and commented:

"So [defense counsel] is in the unenviable position of deciding whether he wants to let this go. And it sounds like you do want to let this go.

"Or, alternatively, having me single out that statement, specifically address it for the jury, and tell them something like . . . whether he's been in jail or not for

8

anything else is irrelevant to the question of whether he committed this crime.  That would be what I would say."  Defense counsel told the judge that he had conferred with the defendant, explained the options, and "[w]e are both asking the Court not to make a curative instruction," because "I don't want to draw attention to it."  The judge noted that the defendant's request not to give a curative instruction was consistent with trial counsel's strategic decision.

We conclude that no substantial risk of a miscarriage of justice arose when the judge acceded to the defendant's request and refrained from giving a curative instruction that would have drawn the jury's attention to the comment.  Cf. Commonwealth v. Cortez, 438 Mass. 123, 130 (2002) (after witness gave unprompted testimony that defendant "just got out of jail," judge allowed motion to strike but denied motion for mistrial).  Any prejudice was lessened by the fact that the defendant was later impeached with his two drug convictions.  See id. (where defendant was impeached with conviction for unlawfully carrying firearm, he "could not have been prejudiced by" unprompted and stricken testimony that he "just got out of jail").  Indeed, when ruling to admit the defendant's prior convictions for impeachment purposes, the judge noted, "it's already come in that the

defendant spent some time in jail.  And . . . it would kind of explain that for the jury."

Judgments affirmed.

By the Court (Grant,
  Brennan & Smyth, JJ.[3]),

Clerk

Entered:  December 11, 2025.

---

[3] The panelists are listed in order of seniority.